# In The
# United States Court of Appeals
## For The Federal Circuit

# RETIREMENT CAPITAL ACCESS MANAGEMENT COMPANY LLC,

*Appellant*,

# v.

# U.S. BANCORP,

*Appellee.*

**APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE PATENT TRIAL AND APPEAL BOARD IN CASE NO. CBM2013-00014**

————————

## BRIEF OF APPELLANT

————————

**Casey L. Griffith**
**KLEMCHUK KUBASTA LLP**
**8150 North Central Expressway, 10th Floor**
**Dallas, Texas 75206**
**(214) 367-6000**

*Counsel for Appellant*

Form 9

FORM 9.  Certificate of Interest

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Retirement Capital Access    v. U.S. Bancorp
Management Company LLC

No. 15-1039

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
APPELLANT _____ certifies the following (use "None" if applicable; use extra sheets
if necessary):

1.      The full name of every party or amicus represented by me is:

Retirement Capital Access Management Company LLC

2.      The name of the real party in interest (if the party named in the caption is not the real
party in interest) represented by me is:

Not Applicable

3.      All parent corporations and any publicly held companies that own 10 percent or more
of the stock of the party or amicus curiae represented by me are:

None

4.  ☑   The names of all law firms and the partners or associates that appeared for the party
or amicus now represented by me in the trial court or agency or are expected to appear in this
court are:

KLEMCHUK KUBASTA LLP, Casey L. Griffith, Austin S. Champion

October 24, 2014
           Date

Signature of counsel

Casey L. Griffith
           Printed name of counsel

Please Note: All questions must be answered
cc: Anthony H. Son

124

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS..................................................................................i

TABLE OF AUTHORITIES ........................................................................iv

STATEMENT OF RELATED CASES .........................................................ix

STATEMENT OF JURISDICTION..............................................................1

STATEMENT OF THE ISSUES PRESENTED...........................................1

STATEMENT OF THE CASE.......................................................................2

    I.     THE CLAIMED INVENTION .............................................2

    II.    PROCEDURAL HISTORY ..................................................5

SUMMARY OF THE ARGUMENT .............................................................7

ARGUMENT .................................................................................................9

    I.     STANDARD OF REVIEW .................................................9

    II.    SECTION 101 IS NOT A PROPER GROUND UPON WHICH A CBM REVIEW MAY BE MAINTAINED .....................................9

        A.    Challenges to the validity of a patent in a transitional proceeding are statutorily limited to grounds "specified" in the Patent Act "as a condition for patentability" .................10

        B.    The plain text and structure of the Patent Act supports the conclusion § 101 is not specified as a condition for patentability.............................................................................11

C.    The PTAB erred in relying on fragments of legislative history and isolated dicta from cases that do not address the § 101 issue because the unambiguous language of the Patent Act controls ................................................................. 12

    1.    The PTAB improperly relied upon non-binding obiter dictum ................................................................. 13

    2.    Prior misinterpretations of the Patent Act do not justify permitting the PTAB to exceed its statutory authority ....................................................................... 17

    3.    The legislative history of the AIA cannot be considered because the statutory language is unambiguous ................................................................. 17

III.   THE '582 PATENT DOES NOT FALL WITHIN THE NARROW SCOPE OF THE ABSTRACT IDEA EXCLUSION TO PATENT ELIGIBILITY ................................................................. 18

A.    The '582 patent contains means-plus-function machine claims, which are not excludable as abstract concepts ............. 19

B.    There is no evidence an abstract concept is implicated by any challenged claims of the '582 patent ................................. 23

C.    Pre-emption is the touchstone of the abstract concept exception to subject matter eligibility, and the claims of the '582 patent pose no risk of pre-emption ........................... 26

    1.    The PTAB all but concedes the claims of the '582 patent pose no risk of pre-emption, which forecloses the possibility these claims fall within the abstract concept exclusion ...................................... 28

    2.    U.S. Bancorp affirmatively represented that practical, non-infringing alternatives to the abstract concept it identified exist, which further shows there is no risk of pre-emption here ................................ 28

3.    There is no evidence any of the limitations on the abstract concept identified by U.S. Bancorp were routine or conventional ...................................................32

4.    The PTAB fails to address substantive limitations on the claims of '582 patent ...........................................34

IV.    THE BOARD ERRED IN CONSTRUING THE TERM "DEPOSITED" AS USED IN THE METHOD CLAIMS..................35

CONCLUSION ......................................................................................43

ADDENDUM

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    134 S. Ct. 2347 (2014)........................................................................*passim*

*Application of Noll,*
    545 F.2d 141 (C.C.P.A. 1976)......................................................21

*Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.,*
    543 F.3d 657 (Fed. Cir. 2008) .............................................13, 16

*Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada,*
    687 F.3d 1266 (Fed. Cir. 2012) ....................................................31

*Benefit Funding Sys. LLC v. Advance Am. Cash Advance Centers Inc.,*
    767 F.3d 1383 (Fed. Cir. 2014) ....................................................10

*Bilski v. Kappos,*
    130 S. Ct. 3218 (2010)........................................................................*passim*

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*
    511 U.S. 164 (1994)......................................................................17

*City of Arlington v. FCC,*
    133 S. Ct. 1863 (2013)....................................................................9

*CLS Bank Int'l v. Alice Corp. Pty.,*
    717 F.3d 1269 (Fed. Cir.) *aff'd,*
    134 S. Ct. 2347 (2014)........................................................27, 28, 31

*Cohens v. Virginia,*
    19 U.S. 264 (1821).......................................................................16

*Conn. Nat'l Bank v. Germain,*
    503 U.S. 249 (1992)................................................................12, 17

iv

*Dann v. Johnston*,
　　425 U.S. 219 (1976)....................................................................21

*DealerTrack, Inc. v. Huber*,
　　674 F 3d 1315 (Fed Cir 2012) .......................................................42

*Diamond v. Diehr*,
　　450 U.S. 175 (1982)...............................................................*passim*

*Ex Parte Verhaegh*,
　　Appeal 2009-000128, 2009 WL 1719535
　　(Bd. Pat. App. & Interfer. June 11, 2009) ........................................20, 22, 23

*Gottschalk v. Benson*,
　　409 U.S. 63 (1972)................................................................*passim*

*Graham v. John Deere Co. of Kansas City*,
　　383 U.S. 1 (1966)..............................................................13, 14, 16

*Hall v. United States*,
　　677 F.3d 1340 (Fed. Cir. 2012) ....................................................12

*Helios Software, LLC v. SpectorSoft Corp.*,
　　No. CV 12-081-LPS, 2014 WL 4796111 (D. Del. Sept. 18, 2014) ..............23

*In re Alappat*,
　　33 F.3d 1526 (Fed. Cir. 1992) .....................................................20

*In re Bilski*,
　　545 F.3d 943 (Fed. Cir. 2008) ...................................................20, 23

*In re Bond*,
　　910 F.2d 831 (Fed. Cir. 1990) .....................................................36

*In re Comiskey*,
　　554 F.3d 967 (Fed. Cir. 2009) ......................................................9

*In re Prater*,
　　415 F.2d 1393 (C.C.P.A. 1969)....................................................37

*In re Zurko*,
    258 F.3d 1379 (Fed. Cir. 2001) ..................................................34

*K/S Himpp v. Hear-Wear Technologies, LLC*,
    751 F.3d 1362 (Fed. Cir. 2014) ..................................................34

*Killip v. Office of Personnel Mgm't*,
    991 F.2d 1564 (Fed. Cir. 1993) ..................................................26

*Langer v. Monarch Life Ins. Co.*,
    966 F.2d 786 (3d Cir. 1992) ......................................................31

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012)........................................................*passim*

*MySpace, Inc. v. GraphOn Corp.*,
    672 F.3d 1250 (Fed. Cir. 2012) ..........................................11, 16

*Norfolk Dredging Co., Inc. v. United States*,
    375 F.3d 1106 (Fed. Cir. 2004) ..................................................12

*Parker v. Flook*,
    437 U.S. 584 (1978)............................................................21, 22

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ..................................................39

*PNC Bank, Nat'l Ass'n v. Secure Axcess, LLC*,
    CBM2014-00100, 2014 WL 4537440
    (Patent Tr. & App. Bd. Sept. 9, 2014)........................................24

*Research Corp. Techs., Inc. v. Microsoft Corp.*,
    627 F.3d 859 (Fed. Cir. 2010) ....................................................18

*Risetto v. Plumbers and Steamfitters Local 343*,
    94 F.3d 597 (9th Cir. 1996) ................................................. 31-32

*Securities & Exchange Comm'n v. Chenery Corp.*,
    318 U.S. 80 (1943)......................................................................26

*State St. Bank & Trust Co. v. Signature Fin. Grp., Inc.*,
  149 F.3d 1368 (Fed. Cir. 1998) ...................................................19

*Wright v. United States*,
  302 U.S. 583 (1938)..................................................................16

**STATUTES**

15 U.S.C. § 78t(e) .......................................................................17

28 U.S.C. § 1295(a)(4)(A) .............................................................1

35 U.S.C. §§ 100-212 ..................................................................11

35 U.S.C. § 100(b) .......................................................................21

35 U.S.C. § 101 ......................................................................*passim*

35 U.S.C. § 102 ......................................................................*passim*

35 U.S.C. § 103 ......................................................................*passim*

35 U.S.C. § 112 ......................................................................*passim*

35 U.S.C. § 112(f) ........................................................................19

35 U.S.C. § 141(c) .........................................................................1

35 U.S.C. § 251 ............................................................................10

35 U.S.C. § 282(b) ......................................................................10

35 U.S.C. § 282(b)(2)............................................................7, 10, 11

35 U.S.C. § 282(b)(3)...................................................................10

35 U.S.C. § 321(b) ...................................................................10, 11

35 U.S.C. § 322............................................................................25, 33

35 U.S.C. § 326(e) .........................................................................................25, 32

35 U.S.C. § 329 ...................................................................................................1

**RULE**

Fed. R. Civ. P. 8 ...............................................................................................31

**REGULATION**

37 C.F.R. § 42.70(a).............................................................................................7

**OTHER AUTHORITIES**

D. Chorafas, Introduction to Derivative Financial Instruments 75-94 (2008) ........25

Emery, Speculation on the Stock and Produce Exchanges of the United States, in 7 Studies in History, Economics and Public Law 283 (1896) .................25

Leahy-Smith America Invents Act [hereinafter "AIA"], Pub. L. No. 112-29, § 18(a)(1), 125 Stat. 284 (2011)............................................................10, 25, 32, 33

MANUAL OF PATENT EXAMINING PROCEDURE § 2111 .............................................37

S. Ross, R. Westerfield, & B. Jordan, Fundamentals of Corporate Finance 743-44 (8th ed. 2008)................................................................................................25

C. Stickney, R. Weil, K. Schipper, & J. Francis, Financial Accounting: An Introduction to Concepts, Methods, and Uses 581-82 (13th ed. 2010) ...................25

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, appellants identify the following judicial matters that would be affected by this Court's decision in the pending appeal:

1.    *Benefit Funding Systems LLC, et al. v. Advance America, Cash Advance Centers, Inc., CNU Online Holdings, LLC F/K/A Cash America Net Holdings, LLC,* Case No. 1:12-cv-801-LPS (D. Del. filed June 22, 2012);

2.    *Benefit Funding Systems LLC, et al. v. Regions Financial Corporation*, Case No. 1:12-cv-802-LPS (D. Del. filed June 22, 2012); and

3.    *Benefit Funding Systems LLC, et al. v. U.S. Bancorp*, Case No. 1:12-cv-803-LPS (D. Del. filed June 22, 2012).

## STATEMENT OF JURISDICTION

The Patent & Trademark Office ("PTO") lacked jurisdiction over U.S. Bancorp's petition because its § 101 challenge falls outside the scope of authorized covered business method ("CBM") review. *See* Part I, *infra*. But The Patent Trial and Appeal Board ("PTAB") nonetheless issued a final decision for CBM review concerning U.S. Patent No. 6,625,582 ("the '582 patent") on August 22, 2014. (A1-22). Retirement Capital Access Management Company ("RCAMC") timely filed a notice of appeal on August 29, 2014. This Court has jurisdiction under 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. §§ 141(c) and 329.

## STATEMENT OF THE ISSUES PRESENTED

1. Whether the PTAB erred in exercising jurisdiction where it lacks statutory authority to review CBM patents for subject-matter eligibility under 35 U.S.C. § 101.

2. Whether, if the PTAB had jurisdiction, it erred in holding all of the challenged claims unpatentable under § 101 where:

    a. four of the challenged claims are "machines" under § 101 and therefore are not excluded from patent eligibility;

    b. there is no evidence to support the PTAB's finding that an abstract idea is implicated by the claims of the '582 patent;

c.    the PTAB does not even contend the '582 patent poses a risk of pre-empting the abstract idea even as asserted by U.S. Bancorp;

d.    the '582 patent poses no risk of pre-emption, including because U.S. Bancorp, in its non-infringement contentions in related patent infringement litigation, represented non-infringing alternatives to U.S. Bancorp's asserted abstract idea exist;

e.    the PTAB found the "without encumbering" limitation on the asserted abstract idea is conventional and routine without citing any evidence, and despite U.S. Bancorp's burden of proving, by a preponderance of the evidence, each of the challenged claims fall under the judicially created exception for abstract ideas; and

f.    the PTAB failed to address whether the substantive limitations on the challenged claims are conventional and routine.

3.    Whether the PTAB erred in construing the term "deposited" as used in the method claims of the '582 patent.

## STATEMENT OF THE CASE

## I.    THE CLAIMED INVENTION

The '582 patent is titled "Method and System for Converting A Designated Portion of Future Social Security and Other Retirement Payments to Current Benefits." (A149).  At the time of the claimed invention of the '582 patent, there

2

existed a growing problem of Social Security and other retirement benefits being insufficient to meet the present-day, and especially emergent needs of retirement-aged individuals. (A30). And laws against alienating or encumbering these retirement benefits restricted beneficiaries' ability to obtain up front capital through assignment or transfer of such benefits using traditional means. (*Id.*).

The inventors recognized this problem and conceived and engineered a system and method that enables beneficiaries of retirement payments to access the present value of future benefits to meet their current needs, while simultaneously complying with U.S. laws. (*Id.*). They did this using necessary sophisticated computer hardware and software coupled with further claim limitations (*e.g.*, limited term, no assignment, beneficiary's right to revoke or not accountable as a result of a reduction in benefits by the source of such benefits, and death releases the surviving spouse or beneficiary's estate) consistent with U.S. laws as interpreted by the Courts. The '582 patent ties together the created new funding source with providers of capital to convert such future payments to a current value. Social Security and retirement payments are unique because of their legal restrictions and the '582 patent specifically only relates to them. The future cash flows utilized in the '582 patent are unique because the statutory proscriptions to their use at the time of this invention made conventional financing techniques

inadequate. For example, at least relating to Social Security, there is no legal obligation that the government continue to make payments to beneficiaries.

The claims of the '582 patent provide a concrete, technological solution with a practical, but limited, application. The beneficiary designates a financial institution to directly receive retirement benefits from the source of such benefits (*i.e.*, not from the beneficiary himself), such as the U.S. government. (*Id.*). The beneficiary also designates a disbursement agent for paying out predetermined portions of retirement payments to a designated funding source of current capital in exchange for, among other options, access to capital in an amount at least in part based on the present value of a designated portion of future retirement payments. (*Id.*). If the beneficiary prematurely terminates participation or the government reduces payments before the funding source is reimbursed, the funding source cannot seek reimbursement for any amounts advanced from any future retirement benefits. (A31). And if the beneficiary dies before reimbursement, the funding source cannot seek payment from a surviving spouse's share of remaining retirement payments or from the beneficiary's estate. (*Id.*).

The '582 patent discloses and claims a system and method requiring specialized computer implementation—a technological innovation that solves a significant problem, not anything near a purely mental process.

## II.    PROCEDURAL HISTORY

RCAMC is owned entirely by the inventors of the '582 patent who continue to be actively involved with the '582 patent.  In June 2012, RCAMC and its exclusive licensee Benefit Funding Systems LLC sued U.S. Bancorp for infringement of the '582 patent, (A25), in the District Court for the District of Delaware in *Benefit Funding Systems LLC, et al. v. U.S. Bancorp*, Case No 1:12-cv-803-LPS (D. Del. filed June 22, 2012).  (*See* A659).  In March 2013, U.S. Bancorp filed a Petition requesting post-grant review of the '582 patent under the transitional program for CBM patents.  It sought CBM review on the sole basis that claims 1, 13, 14, 18, 30, and 31 are directed to unpatentable subject matter under § 101.  (A37).

RCAMC opposed U.S. Bancorp's Petition on multiple grounds.  It explained the challenged claims encompass significantly less than the identified abstract idea of advancing funds based on future retirement payments.  (A133-35).  RCAMC further asserted U.S. Bancorp's failure to address the "without encumbering" limitation that was added to overcome prior art cited by the Examiner was fatal. (A135-36).  It argued U.S. Bancorp's representations in its non-infringement contentions in related litigation foreclosed any argument the claims cover the abstract idea itself.  (A136-37).  And lastly, RCAMC asserted the challenged claims include limitations requiring funds to be directly deposited using the

specialized process of electronic funds transfer, making a computer integral to the challenged claims. (A138-45). For these reasons, RCAMC argued, U.S. Bancorp failed to meet its burden of showing it is more likely than not at least one of the challenged claims falls under the abstract idea exception to patentability. (A145).

In September 2013, the PTAB instituted review. (A147). In concluding the '582 is a covered business method patent, the PTAB found the challenged claims lack a novel and nonobvious feature because "no specific unconventional software, computer equipment, tools, or processing capabilities are required." (A154). In addition, it found RCAMC's claims do not solve a technical problem using a technical solution. (A155). After reviewing the challenged claims, the PTAB ultimately determined U.S. Bancorp sufficiently demonstrated it was more likely than not the challenged claims were unpatentable. (A160). It granted U.S. Bancorp's Petition and instituted a trial. (*Id.*).

RCAMC filed a response in November 2013. (A162). It explained U.S. Bancorp's § 101 challenge exceeded the PTAB's statutory authority given Congress textually excluded § 101 issues from the scope of post-grant review. (A207-14). It also argued U.S. Bancorp's failure to submit evidence precluded a finding U.S. Bancorp met its burden. (A176-80). And further that U.S. Bancorp failed to show the challenged '582 patent claims are unpatentable under § 101. (A186-207). U.S. Bancorp filed a reply in January 2014, (A233), and both parties

6

requested an oral hearing under 37 C.F.R. § 42.70(a), which was held in April 2014. (A298).

On August 22, 2014, the PTAB issued its final written decision, holding § 101 is a proper ground upon which a CBM review can be maintained, and that the challenged claims (1, 13, 14, 18, 30, and 31) recite abstract concepts and thus are invalid under § 101. (A9-21). This appeal followed.

## SUMMARY OF THE ARGUMENT

The PTAB exceeded its statutory authority when it granted CBM review on the issue of patent eligibility under § 101. (A147). The statute limits challenges to grounds "specified" by Congress as "conditions for patentability" in Part II of the Patent Act. 35 U.S.C. § 282(b)(2). Part II specifies only two sections as conditions for patentability—§§ 102 and 103, *not* § 101. Rather than apply the plain language of the statute, the PTAB based its contrary conclusion on irrelevant language contained in cases addressing other issues and minor fragments of legislative history. (A9-10). The statute's plain terms do not take a back seat to these sources, and the PTAB's reliance on them is substantively and procedurally incorrect.

The PTAB's lack of jurisdiction is dispositive, but even if it had jurisdiction to conduct a CBM review on the basis of § 101, it erred on the merits by

incorrectly concluding U.S. Bancorp sufficiently demonstrated it was more likely than not the challenged claims were unpatentable.

The '582 patent does not fall within the scope of the abstract concept exception to patentability. Indeed, a number of the claims of the '582 patent include means-plus-function limitations, not challenged by U.S. Bancorp on indefiniteness grounds, that, as a matter of law are deemed to be machines under § 101—not "processes" subject to the Supreme Court's two-step abstract concept test first set forth in *Gottschalk v. Benson*, 409 U.S. 63 (1972). Further, U.S. Bancorp was burdened with proving its invalidity contention below, yet it failed to offer *any* evidentiary support for its positions. It seeks to take away RCAMC's duly issued, novel, non-obvious, and useful property right in the '582 patent without a scintilla of evidentiary support. To begin with, there is no evidence to support U.S. Bancorp's contention an abstract concept is even implicated by the '582 patent.

Despite the fact pre-emption is the benchmark of the Supreme Court's "abstract concept" jurisprudence, the PTAB's final decision erroneously concludes "pre-emption" is only one test for determining whether patent claims fall within the scope of the exception to subject matter eligibility; indeed, the PTAB all but concedes the '582 patent claims pose no risk of pre-emption and thus the '582 patent meets the PTAB's pre-emption interpretation. Neither U.S. Bancorp nor the

PTAB identified an evidentiary basis for concluding claims of the '582 patent pose a risk of pre-emption. And U.S. Bancorp's affirmative factual representations in connection with its non-infringement contentions in related litigation foreclose any argument there is no practical way to practice what it contends is an abstract concept; it is axiomatic that a party practicing the abstract concept at issue must necessarily infringe a patent that allegedly subsumes that abstract concept. Finally, both U.S. Bancorp and the PTAB failed to address whether substantive limitations on the claims of the '582 patent were routine and conventional, which they are not.

## ARGUMENT

## I.    STANDARD OF REVIEW

All issues on appeal are subject to *de novo* review. The statutory construction of § 101 is reviewed *de novo*. *City of Arlington v. FCC*, 133 S. Ct. 1863, 1868 (2013) ("the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress"). Patent eligibility under § 101 is likewise reviewed *de novo*. *In re Comiskey*, 554 F.3d 967, 975 (Fed. Cir. 2009) (§ 101 determinations are "question[s] of law . . . review[ed] without deference").

## II.   SECTION 101 IS NOT A PROPER GROUND UPON WHICH A CBM REVIEW MAY BE MAINTAINED

Section 101 is not a valid ground for CBM review. The PTAB therefore lacked jurisdiction to review the '582 patent solely on the basis of § 101, and its decision must be reversed as contrary to the statute that created its limited

jurisdiction. *See Benefit Funding Sys. LLC v. Advance Am. Cash Advance Centers Inc.*, 767 F.3d 1383, 1386 (Fed. Cir. 2014) ("This is not to say that a patent owner could never attack the PTAB's authority to conduct CBM review.    Indeed, Appellants might potentially challenge that authority in the context of a direct appeal of the PTAB's final decision.").   In fact, since RCAMC is being denied a jury trial under this post-grant process, it is imperative that compliance with the laws and rules be careful and complete.

> **A.    Challenges to the validity of a patent in a transitional proceeding are statutorily limited to grounds "specified" in the Patent Act "as a condition for patentability."**

A petitioner in a transitional proceeding "may request to cancel as unpatentable one or more claims of a patent on any ground that could be raised under paragraph (2) or (3) of [35 U.S.C.] 282(b)." 35 U.S.C. § 321(b); *see also* Leahy-Smith America Invents Act [hereinafter "AIA"], Pub. L. No. 112-29, § 18(a)(1), 125 Stat. 284, 331 (2011).   Under paragraph 2 of § 282(b), a party may seek invalidity of a patent or any claim "on any ground *specified in part II as a condition for patentability*." 35 U.S.C. § 282(b)(2) (emphasis added).   Paragraph 3 of § 282(b) provides that a party may seek invalidity of a patent or any claim for failure to comply with: (a) any requirement of § 112 (excluding failure to disclose best mode); or (b) any requirement of § 251. *Id.* § 282(b)(3).   Accordingly, § 101

can constitute a basis for instituting a transitional proceeding *only* if it constitutes a "ground specified in part II as a condition for patentability." *Id.* § 282(b)(2).

**B.    The plain text and structure of the Patent Act supports the conclusion § 101 is not specified as a condition for patentability.**

Part II of Title 35 encompasses sections 100-212.  Of numerous sections in Part II, only two are specified as a "condition for patentability."  Section 102 is titled "Conditions for patentability; novelty" and § 103 is titled "Conditions for patentability; non-obvious subject matter."  Moreover, no other section contained in Part II includes the terms "condition" and "patentability" anywhere, either in the title or in the body.  Thus "[t]he two sections of part II that Congress has denominated as 'conditions of patentability' are § 102 ('novelty and loss of right to patent') and § 103 ('nonobvious subject matter')."  *MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1260 (Fed. Cir. 2012).  And while statutory headings are not invariably dispositive, Congress explicitly included the term "specify", which focuses on *labels*—not just content.  This point is bolstered by the fact Congress textually designated §§ 102 and 103 in Part II as "conditions for patentability."  Section 101 is not *specified* as a condition for patentability; it falls outside § 321(b) and cannot form the basis of CBM review.

The substance of §§ 102 and 103 further confirm they are inarguably "conditions for patentability."  Section 102 states "[a] person shall be entitled to a patent *unless* . . . ."  35 U.S.C. § 102 (emphasis added).  Section 103 states "a

patent for an invention may not be obtained . . . *if* the differences" would have been obvious at the time of the invention.  35 U.S.C. § 103 (emphasis added).  Section 102 conditions patentability on novelty; Section 103 conditions patentability on non-obviousness.  In contrast, § 101 permissively states "[w]hoever invents or discovers any new and useful process . . . or any new and useful improvement thereof, may obtain a patent therefore," but doing so is "subject to the *conditions and requirements of this title*."  35 U.S.C. § 101 (emphasis added).  Something cannot be *a* condition of the title when it is subject to *the* conditions of the title.  Something cannot be "subject to" its own existence.

The plain language and structure of the Patent Act unambiguously exclude § 101 from the scope of CBM review.  No further construction is necessary or even permissible.  *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992); *Norfolk Dredging Co., Inc. v. United States*, 375 F.3d 1106, 1110 (Fed. Cir. 2004).  Transitional proceedings therefore may not be instituted on the basis of § 101, and the PTAB erred in doing so with respect to the '582 patent.  Its decision should be reversed for lack of jurisdiction.

**C.    Because the unambiguous language of the Patent Act controls, the PTAB erred in relying on fragments of legislative history and isolated dicta from cases that do not address the § 101 issue.**

It is well settled that statutory construction begins with the language of the statute.  *See Hall v. United States*, 677 F.3d 1340, 1345 (Fed. Cir. 2012).  Yet, the

PTAB (and U.S. Bancorp) failed to address the express language of § 101, and instead relied upon isolated, non-binding dicta from a handful of cases, and fragments of legislative history. (A9-10). The PTAB's reliance on these sources is misguided—the plain language of the statute controls.

### 1.    The PTAB improperly relied upon non-binding obiter dictum.

The propositions cited by the PTAB to support its position § 101 is a condition of patentability are incidental expressions of opinion, not precedential holdings. The only "precedent" cited by the PTAB is *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 12 (1966), and *Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*, 543 F.3d 657, 661 (Fed. Cir. 2008), neither of which contains a binding holding on the issue of whether § 101 is a condition of patentability.

Over half a century ago, in *Graham*, the Supreme Court held the 1952 Patent Act had no effect upon the traditional statutory and judicial tests of patentability. *Graham*, 383 U.S. at 3-4. The Court's opinion centered on nonobviousness under § 103, and concluded that instead of creating a new level of patentability, § 103 was intended only to codify judicial precedent. *Id.* The Court further concluded that although the 1952 Patent Act used the language "nonobviousness," the level of innovation required for patentability remained the same. *Id.* at 4. The *Graham* Court did not hold § 101 is specified as a condition for patentability. Indeed, *Graham* did not even involve considerations of patent eligibility under § 101.

13

In discussing §§ 101 and 102 in *Graham*, Justice Clark noted "patentability is dependent upon three explicit conditions: novelty and utility as articulated and defined in § 101 and § 102, and nonobviousness . . . as set out in § 103." *Id.* at 12. Justice Clark's statement on the pre-Title common law "eligible subject matter" is *not* a condition for patentability. Further, if *Graham* stands for the proposition that utility, "eligible subject matter," novelty, and non-obviousness are all conditions for patentability, then the Court's statement there are "three conditions"[1] makes no sense—if "eligible subject matter" is a condition for patentability, then there are four, not three, conditions. Therefore, the *Graham* Court suggests only utility from § 101 is a condition for patentability, and it does so repeatedly.

Other Supreme Court decisions actually addressing patent eligibility under § 101 contradict the dictum[2] in *Graham*. In *Diamond v. Diehr*, 450 U.S. 175 (1982), for example, the Court stated:

> It has been urged that novelty is an appropriate consideration under § 101. Presumably this argument results from the language in § 101 referring to any "new and useful" process, machine, etc. Section 101, however, is a general statement of the type of subject matter that is eligible for patent protection "subject to the conditions and requirements of this title." Specific conditions for patentability follow and § 102 covers in detail the conditions relating to novelty. The question therefore of whether a particular invention is novel is "wholly apart from

---

[1] 383 U.S. at 17.

[2] These other Supreme Court decisions also are not binding because they do not involve a holding that § 101 is specified in the Patent Act as a condition of patentability.

whether the invention falls into a category of statutory subject matter." *In re Bergy*, 596 F.2d 952, 961 (Cust. & Pat. App., 1979) (emphasis deleted). See also *Nikola v. Peterson*, 580 F.2d 898 (CA6 1978). The legislative history of the 1952 Patent Act is in accord with this reasoning. The Senate Report stated:

"Section 101 sets forth the subject matter that can be patented, 'subject to the conditions and requirements of this title.' The conditions under which a patent may be obtained follow, and *Section 102 covers the conditions relating to novelty*." S. Rep. No. 1979, 82d Cong., 2d Sess., 5 (1952), U.S. Code Cong. & Admin. News, 1952, p. 2399 (emphasis supplied).

. . . .

Finally, it is stated in the "Revision Notes":

"The corresponding section of [the] existing statute is split into two sections, section 101 relating to the subject matter for which patents may be obtained, and section 102 defining statutory novelty and stating other conditions for patentability." *Id.*, at 17, U.S. Code Cong. & Admin. News, 1952, p. 2409. See also H.R. Rep. No. 1923 82d Cong., 2d Sess., at 6, 7, and 17 (1952).

In this case, it may later be determined that the respondents' process is not deserving of patent protection because it fails to satisfy the statutory conditions of novelty under § 102 or nonobviousness under § 103. A rejection on either of these grounds does not affect the determination that respondents' claims recited subject matter which was eligible for patent protection under § 101.

*Id.* at 189-91 (emphasis in original).

Similarly, the Court more recently stated in *Bilski v. Kappos*, 130 S. Ct. 3218 (2010):

> The § 101 patent-eligibility inquiry is only a threshold test. Even if an invention qualifies as a process, machine, manufacture, or composition of matter, in order to receive the Patent Act's protection the claimed invention must also satisfy "the conditions and requirements of this title." § 101. Those requirements include that the invention be novel, see § 102, nonobvious, see § 103, and fully and particularly described, see § 112.

*Id.* at 3225.   These pronouncements[3] help explain why the Supreme Court counsels the following maxim should not be disregarded:

> '[G]eneral expressions, in every opinion, are to be taken in connection with the case in which those expressions are used,' and that if they go 'beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision . . . .'

*Wright v. United States*, 302 U.S. 583, 593-94 (1938) (quoting *Cohens v. Virginia*, 19 U.S. 264, 399 (1821)).

Reliance on the Federal Circuit's opinion in *Aristocrat* is equally in vain.  To begin with, *Aristocrat* did not involve subject matter eligibility under § 101.[4]  And any dicta relied upon in *Aristocrat* traces back to the dicta from *Graham*. Moreover, language can be found in other Federal Circuit cases stating exactly the opposite.   In *Myspace*, for example, this Circuit states, "[t]he two sections of part II that Congress has denominated 'conditions of patentability' are § 102 and § 103 . . . ."  672 F.3d at 1260-61.

---

[3] In *Graham* on the one hand, and in *Diehr* and *Bilski* in the other.

[4] The issue in *Aristocrat* was whether improper revival of a patent application or patent is a defense to a civil action for patent infringement. 543 F.3d at 660-61.

16

### 2.    Prior misinterpretations of the Patent Act do not justify permitting the PTAB to exceed its statutory authority.

Even assuming the language cited by the PTAB was not dicta, it nonetheless was based on a misinterpretation of the plain language of the Patent Act and therefore does not permit the PTAB to exceed its statutory authority. Longstanding statutory misinterpretation that pervades conventional thinking does not justify continuing to ignore Congressional intent as expressed in statutes. Even a long-lived statutory misinterpretation will not bar restoring the patent system to its statutory limits. *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177, 191 (1994), *superseded on other grounds by* 15 U.S.C. § 78t(e) (1995) (overruling sixty years of allowance of statutory cause of action because Congress had not expressly provided for that cause of action).

### 3.    The legislative history of the AIA cannot be considered because the statutory language is unambiguous.

Despite U.S. Bancorp's contention to the contrary, the legislative history of the AIA does not confer authority on the PTAB to consider § 101 challenges in transitional proceedings. The text of the Patent Act is unambiguous in only specifying §§ 102 and 103 are conditions for patentability. *See supra* Part II.A. Legislative history, consequently, is irrelevant because "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). The

text of the Patent Act unambiguously defines §§ 102 and 103 as the only

conditions for patentability.  As a result, there is no authority to cancel any claims

of the '582 patent on the basis of patent eligibility under § 101.

## III.    THE '582 PATENT DOES NOT FALL WITHIN THE NARROW SCOPE OF THE ABSTRACT IDEA EXCLUSION TO PATENT ELIGIBILITY

Under § 101, an applicant may obtain a patent on a new and useful

(1) "process," (2) "machine," (3) "manufacture," or (4) "composition of matter," or

"any new and useful improvement thereof."  35 U.S.C. § 101.  Section 101

provides "broad patent-eligibility principles."  *Bilski*, 130 S. Ct. at 3225.  Indeed,

§ 101 is a "coarse eligibility filter."  *Research Corp. Techs., Inc. v. Microsoft*

*Corp.*, 627 F.3d 859, 869 (Fed. Cir. 2010).

Section 101 generally encompasses "anything under the sun that is made by

man," *except* "laws of nature, natural phenomena, and abstract ideas."  *Diamond v.*

*Diehr*, 450 U.S. 175, 182, 185 (1981).  The Court has recognized "too broad an

interpretation of this exclusionary principle could eviscerate patent law."  *Mayo*,

132 S. Ct. at 1293.  This is so because "**all** inventions at some level embody, use,

reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas."

*Id.* (emphasis added).  Courts therefore must distinguish between patents that claim

the "building blocks" of human ingenuity—and "'would risk *disproportionately*

*tying up* the use of the underlying'" abstract ideas—and patents that "integrate the

18

building blocks into something more, thereby 'transform[ing]' them into a patent-eligible invention," such that they pose no comparable risk of pre-emption.  *Alice*, 134 S. Ct. at 2354-55 (quoting *Mayo*, 132 S. Ct. at 1294, 1303) (emphasis added). Contrary to the PTAB's conclusion, (A19), the challenged claims of the '582 patent do not fall within the scope of the abstract-idea exclusion and thus pose no risk of pre-emption.

### A.   The '582 patent contains means-plus-function machine claims, which are not excludable as abstract concepts.

Claims 13, 14, 30, and 31 of the '582 patent contain machine claims under § 101 and therefore are not excluded from patent eligibility.  They are apparatus claims having "means-plus-function" limitations.  Each of these claims, for example, require "means for causing said future retirement payments to be deposited into said account".  (A35-36).  U.S. Bancorp cannot dispute this limitation complies with 35 U.S.C. § 112, ¶ 6[5], and the PTAB construed this limitation to mean "disbursing directly to said account utilizing an electronic funds transfer."  (A7).  Claims 13, 14, 30, and 31, therefore, are machine claims under § 101, and satisfy the machine or transformation test.  *See State St. Bank & Trust Co. v. Signature Fin. Grp., Inc.*, 149 F.3d 1368, 1371 (Fed. Cir. 1998), *abrogated*

---

[5] As the PTAB noted below, AIA Section 4(c) re-designated 35 U.S.C. § 112, ¶ 6, as 35 U.S.C. § 112(f).  Because the '582 patent has a filing date before September 6, 2012 (effective date), the PTAB referred to the pre-AIA version of § 112.  (A7). U.S. Bancorp did not seek CBM review on ground that any claim of the '582 patent was invalid for failure to comply with the requirements of § 112.

by *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) (citing *In re Alappat*, 33 F.3d 1526, 1540-41 (Fed. Cir. 1992) (en banc)) ("'[M]achine' claims having 'means' clauses may only be reasonably viewed as process claims if there is no supporting structure in the written description that corresponds to the claimed 'means' elements."); *Ex Parte Verhaegh*, Appeal 2009-000128, 2009 WL 1719535, *7 (Bd. Pat. App. & Interfer. June 11, 2009) (holding means-plus-function limitations satisfying § 112, ¶ 6 likewise satisfy the machine or transformation test); *see also Bilski*, 561 U.S. at 641 n.40 (Stevens, J., concurring) ("But State Street . . . addressed only claims directed at machines, not processes"); *In re Bilski*, 545 F.3d 943, 959 n.18 (Fed. Cir. 2008), *aff'd but criticized sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010) (emphasis in original) ("In *State Street*, as is often forgotten, we addressed a claim drawn not to a process but to a *machine*.").

In applying the "abstract concept" exception to patent eligibility, neither the Supreme Court nor the Federal Circuit has found a patent containing non-indefinite, means-plus-function claim fails to constitute eligible subject matter. Indeed, since the Supreme Court's opinion in *Benson*, all but one of its decisions involved the issue of whether a "process" was patentable under § 101.

In *Benson*, the Supreme Court encountered the issue of whether a method for converting binary-coded decimals was a patentable "process" under § 101. 409 U.S. at 64. The Court found it was not because a patent on the formula would

result in a patent on the algorithm itself, which would be tantamount to allowing a patent on an abstract idea. *Id.* at 64. Despite its holding, the Court emphasized its decision did not preclude software from being patented, but rather precluded the patentability of software where the only useful characteristic was an algorithm. *See id*; *see also Dann v. Johnston*, 425 U.S. 219, 224 (1976) ("Our limited holding . . . was that respondent's method was not a patentable 'process' as that term is defined in 35 U.S.C. § 100(b)"); *Application of Noll*, 545 F.2d 141, 149 (C.C.P.A. 1976) ("We conclude that *Benson* must be limited to method claims such as those presented in that case").

Six years later, in *Parker v. Flook*, the Supreme Court again considered whether a method claim was a patentable "process" within the meaning of § 101. 437 U.S. 584, 588-89 (1978). The claim in *Flook* was a method of calculating alarm limits by using an algorithm to make the system responsive to trends but not momentary fluctuations in variables, such as temperature. *Id.* at 586. The Court held that an invention that departs from the prior art only in its use of an algorithm is patent eligible only if the implementation is novel and nonobvious. *Id.* at 594. Yet in *Diamond v. Diehr*, the Court backed away from the analytic dissection approach and held method claims directed to a process for molding rubber products were a patentable process under § 101. 450 U.S. 175, 192-93 (1981). Thus, none of these patent-eligibility decisions questioned whether a claim

21

qualified as a "machine" under § 101. In *Bilski*, the Court again visited processes.

It stated:

> The present case involves an invention that is claimed to be a "process" under § 101. Section 100(b) defines "process" as:
>
>> "process, art or method, and includes a new use of a known process, machine, manufacture, composition of matter, or material."
>
> The Court first considers two proposed categorical limitations on "process" patents under § 101 that would, if adopted, bar petitioners' application in the present case: the machine-or-transformation test and the categorical exclusion of business method patents.

561 U.S. at 602. The Court held the method claims at issue in *Bilski* were not a "process" under § 101. *Id.* at 609 ("the Court resolves this case narrowly on the basis of this Court's decisions in *Benson*, *Flook*, and *Diehr*, which show that petitioners' claims are not patentable processes . . .").

The Supreme Court has never addressed the applicability of the abstract concept exception to subject matter eligibility to non-indefinite, means-plus-function limitations. In *Ex Parte Verhaegh*, however, the Board of Patent Appeals and Interferences reversed the examiner's interpretation of means-plus-function apparatus claims as process claims and rejection as non-statutory subject matter under § 101. 2009 WL 1719535 at *7. The Board found the claims were "directed to a particular machine" because they complied with § 112, ¶ 6, thereby satisfying the machine-or-transformation test as described in the Federal Circuit's then recent

en banc *Bilski* decision. Consequently, the Board held the claims were not directed to non-statutory subject matter. *Id.*

The bottom line is RCAMC is aware of no court that has found claims satisfying the machine-or-transformation test are nevertheless ineligible for patenting under § 101. Contrary to the PTAB's conclusion, non-indefinite, means-plus-function machine claims 13, 14, 30, and 31 are not subject to the abstract concept exception of patent eligibility. Because they are deemed to apply to a particular machine, they cannot be considered an abstract idea.

### B. There is no evidence an abstract concept is implicated by any challenged claims of the '582 patent.

The first step in determining whether a claim falls within the scope of the abstract concept exception to subject matter eligibility is to identify whether the claims at issue are directed to a patent-ineligible concept. *Alice*, 134 S. Ct. at 2355. If there is no evidentiary support for a challenger's contention an abstract concept is implicated, then the subject matter eligibility objection should be rejected. *See Helios Software, LLC v. SpectorSoft Corp.*, No. CV 12-081-LPS, 2014 WL 4796111, at *17 (D. Del. Sept. 18, 2014) ("Although 'remotely monitoring data associated with an Internet session' or 'controlling network access' may be principles fundamental to the ubiquitous use of the Internet or computers generally, SpectorSoft has provided no support for that position. As such, the Court cannot agree with SpectorSoft that the patents-in-suit are drawn to

an abstract idea."); *PNC Bank, Nat'l Ass'n v. Secure Axcess, LLC*, CBM2014-00100, 2014 WL 4537440, at *13 (Patent Tr. & App. Bd. Sept. 9, 2014) ("We also find that Petitioner does not provide sufficient persuasive evidentiary support that the placing of a trusted stamp or seal on a document is 'a fundamental economic practice' or a 'building block of the modern economy'").

Below, U.S. Bancorp contended the claims of the '582 patent are directed to the "concept of advancing funds based on future retirement payments." (A72). Yet, it failed to cite evidence to support that this concept can even be considered abstract under § 101. Its subject matter eligibility objection should therefore be rejected. And even despite the absence of evidence to support U.S. Bancorp's contention the concept it identified is one to which the "abstract concept" exception to subject matter eligibility pertains, the PTAB found, in its final decision, "the concept of advancing funds based on future retirement payments is an economic practice long prevalent in our system of commerce and squarely within the realm of abstract ideas." (A13). Like U.S. Bancorp, the PTAB failed to cite authority to support its proposition.

Notably, the PTAB contended its identified abstract concept is "[s]imilar to the concept of intermediated settlement in *Alice Corp.* and the concept of risk hedging in *Bilski* . . . ." (*Id.*). Yet, the Supreme Court's observations in *Alice* and

24

*Bilski* regarding long prevalent concepts were supported by actual evidence. Here, there is no evidence to support the PTAB's finding.

In *Alice*, the Court cited, among other materials, Emery, Speculation on the Stock and Produce Exchanges of the United States, in 7 Studies in History, Economics and Public Law 283, 346-356 (1896), as support for the proposition the use of a third-party intermediary had long been in use. 134 S. Ct. at 2356. Likewise, in *Bilski*, the Court cited D. Chorafas, Introduction to Derivative Financial Instruments 75-94 (2008), C. Stickney, R. Weil, K. Schipper, & J. Francis, Financial Accounting: An Introduction to Concepts, Methods, and Uses 581-82 (13th ed. 2010), and S. Ross, R. Westerfield, & B. Jordan, Fundamentals of Corporate Finance 743-44 (8th ed. 2008) to support its finding hedging was a long used fundamental economic practice. 561 U.S. at 611.

Here, neither the PTAB nor U.S. Bancorp cited any support for a finding the concept of advancing funds based on future retirement payments is an economic practice long prevalent in our system of commerce, or otherwise an abstract concept. Yet U.S. Bancorp was burdened with proving by a preponderance of the evidence that a proposition of invalidity is true. AIA § 18(a)(1); 35 U.S.C. § 326(e). U.S Bancorp was also required by statute to have identified in its petition, in writing and with particularity all evidence supporting the grounds for challenging the claims. AIA § 18(a)(1); 35 U.S.C. § 322. Given the absence of

any evidence, the PTAB's finding is *ipse dixit*, and cannot be upheld, as doing so would require making a determination of fact—*i.e.*, finding, based on evidentiary support, the concept identified by U.S. Bancorp is "abstract"—not previously made by the PTAB. *See Killip v. Office of Personnel Mgm't*, 991 F.2d 1564, 1568-69 (Fed. Cir. 1993) ("We may . . . affirm the Board's decision on grounds other than those relied upon in rendering its decision, when upholding the Board's decision does not depend upon making a determination of fact not previously made by the Board") (citing *Securities & Exchange Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943)).

### C. Pre-emption is the touchstone of the abstract concept exception to subject matter eligibility, and the claims of the '582 patent pose no risk of pre-emption.

The concern driving the abstract concept exception to subject matter eligibility is preemption. In *Benson*, the Supreme Court stated:

> One may not patent an idea. But in practical effect that would be the result if the formula for converting BCD numerals to pure binary numerals were patented in this case. The mathematical formula involved here has no substantial application except in connection with a digital computer, which means that if the judgment below is affirmed, the patent would wholly pre-empt the mathematical formula and in practical effect would be a patent on the algorithm itself.

409 U.S. at 71-72; *see also Alice*, 134 S. Ct. at 2358 (a "pre-emption concern . . . undergirds our § 101 jurisprudence"); *Mayo*, 132 S. Ct. at 1294 (case law "warn[s] against upholding patents that claim processes too broadly preempt

26

the use of a natural law"); *Bilski*, 561 U.S. at 611-12 ("The concept of hedging, described in claim 1 and reduced to a mathematical formula in claim 4, is an unpatentable abstract idea . . .  Allowing petitioners to patent risk hedging would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea."); *Diehr*, 450 U.S. at 187 ("Their process admittedly employs a well-known mathematical equation, but they do not seek to pre-empt the use of that equation.  Rather, they seek only to foreclose from others the use of that equation in conjunction with all of the other steps in their claimed process."). Again, the Court has recognized "too broad an interpretation of this exclusionary principle could eviscerate patent law," because "all inventions at some level embody, use, reflect, rest upon, or apply . . . abstract ideas." *Mayo*, 132 S. Ct. at 1293 (emphasis added).  Patent claims that do not disproportionately tie up the use of the allegedly abstract idea—*i.e.*, patent claims posing no risk of pre-emption— remain eligible for patent protection. *Alice*, 134 S. Ct. at 2354.

In short, the initial inquiry is:  "Does the claim pose any risk of preempting an abstract idea?"  *CLS Bank Int'l v. Alice Corp. Pty.*, 717 F.3d 1269, 1282 (Fed. Cir.) *aff'd*, 134 S. Ct. 2347 (2014).  "In most cases, the answer will plainly be no." *Id.*

1.    **The PTAB all but concedes the claims of the '582 patent pose no risk of pre-emption, which forecloses the possibility these claims fall within the abstract concept exclusion.**

Both U.S. Bancorp and the PTAB failed to consider whether the claims of the '582 patent pose any risk of pre-emption.  Indeed, rather than address pre-emption, the PTAB stated "pre-emption is only one test to determine whether a claim is directed to an abstract idea." (A20).  The Supreme Court has consistently warned that patent eligibility should not depend on the skill of the patent draftsperson.  The great irony is that by disregarding the grounding principle of pre-emption, the PTAB renders patent eligibility completely dependent on its drafting skill in characterizing the invention as some abstract idea and arbitrarily selecting from its toolbox which limitations will be insignificant.  The courts should respect and give full weight to the Supreme Court's treatment of pre-emption as the primary basis for the judicial exclusions to § 101.  Thus, the answer to the preliminary question of pre-emption here is plainly, "No," and no further evaluation of the "abstract concept" exception to subject matter eligibility is warranted.  *See CLS Bank Int'l*, 717 F.3d at 1282.

2.    **U.S. Bancorp affirmatively represented that practical, non-infringing alternatives to the expressed abstract concept exist, which further shows there is no risk of pre-emption here.**

There is no risk of pre-emption here.  To begin with, U.S. Bancorp affirmatively represented in discovery responses that non-infringing alternatives to

the abstract concept it identified exist, so, as a matter of law, the claims of the '582 patent cannot encompass the full scope of that abstract concept. In non-infringement contentions in the related district court suit, U.S. Bancorp admitted it is using the abstract concept it identified in the CBM review below.[6] Specifically, when asked to identify the elements of the claims of the '582 patent it is not practicing, U.S. Bancorp stated:

> The accused CAA service also does not meet the claim limitation of "providing said monetary benefit to said beneficiary from said benefit provider . . . without encumbering said beneficiary's right to said future retirement payments." See Claim 1. As explained in response to Interrogatory No. 2, the advanced amount and the associated fee are automatically paid when the next Direct Deposit of $100 or more is received by U.S. Bank. In addition, if the advance is not paid by the 35th day following the advance, the bank will withdraw the outstanding balance from the checking account. U.S. Bank also retains a security interest in the checking account to secure payment of CAA obligations. **Therefore, the CAA service does not provide a monetary benefit "without encumbering said beneficiary's right to said future retirement payments."**

(A74-76) (emphasis added). Moreover, U.S. Bancorp contends it has implemented the abstract concept alleged to be involved in the '582 patent claims without practicing the "providing said monetary benefit from said benefit provider based at

---

[6] U.S. Bancorp has stated the product accused of infringement in the related litigation permits customers "to obtain a short term line of credit that is repaid from the customer's next Direct Deposit." (A64).

least in part on present value of a designated portion of said future payments"

limitation.  U.S. Bancorp stated:

> [U]nlike the claimed invention of the Patent-in-Suit, no prevent
> [*sic*] value calculation of a designated portion of the *future*
> retirement payment is performed by U.S. Bank.  Instead, the
> credit limit for cash advances is the lesser of $500 or half of the
> total Direct Deposit amounts from the *prior* month.  Moreover,
> the CAA service is a short term loan (e.g. 35 days or less) and
> thus a present value calculation is irrelevant to determining the
> loan amount.  Because present values of anticipated future
> retirement deposits are not used to calculate loan advances, the
> CAA service does not base cash advance or loan amount "at
> least in part on present value of a designated portion of said
> future retirement payments" as required by claim 1 and the
> other asserted claims of the Patent-in-Suit.

(A75).

U.S. Bancorp's contention that non-infringing alternatives exist is not

directed to a mere theoretical non-infringing alternative.  Rather, it is directed to an

actual service offered by U.S. Bancorp—one so important that U.S. Bancorp was

willing to risk subjecting itself to a "crack down" on "big bank" payday loans by

the Office of the Comptroller of the Currency and the FDIC.  (A882).  U.S.

Bancorp cannot have it both ways.  It cannot meet its burden of proving the claims

of the '582 patent are coextensive with the concept of advancing funds based on

future retirement payments, while simultaneously identifying specific changes that

can be made to RCAMC's patented machines and processes that do not infringe.  If

a claim is abstract, it necessarily "subsume[s] the full scope of a fundamental

concept . . . ." *CLS Bank Int'l*, 717 F.3d at 1282. U.S. Bancorp's non-infringement contentions preclude it from meeting its burden of proving the challenged claims subsume the identified fundamental concept.

The PTAB attempts to excuse U.S. Bancorp's fast-and-loose behavior with evidence by contending its statements were made in pleadings, and noting parties are permitted under Federal Rule of Civil Procedure 8 to plead in the alternative. (A 20). Yet U.S. Bancorp's admissions have nothing to do with pleadings—they were factual allegations made in response to specific discovery requests. In *Bancorp*—the sole authority upon which the PTAB relies—the Federal Circuit found the accused infringer's defense of non-infringement did not detract from its defense of invalidity because the Rules allow alternative pleading. *Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada*, 687 F.3d 1266, 1280 (Fed. Cir. 2012). In *Bancorp*, however, both of the appellee's defenses were raised in *pleadings*—not sworn discovery responses. *Id.* And although a party may plead in the alternative, it cannot swear to inconsistent facts and later choose which version of the truth it wants to stand behind during legal proceedings. *Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 803 (3d Cir. 1992). Indeed, parties are bound by their discovery responses. *Id.* They should not be allowed to play fast and loose with the courts by taking incompatible factual positions. *Risetto v. Plumbers and Steamfitters*

*Local 343*, 94 F.3d 597, 600-01 (9th Cir. 1996). Yet that is precisely what U.S. Bancorp is doing here.

U.S. Bancorp is bound by its concession that non-infringing alternatives to the allegedly abstract concept exist. This forecloses any argument the claims of the '582 patent are coextensive with the concept of advancing funds based on future retirement payments. For this additional reason alone, none of the claims of the '582 patent are excluded from patentability under § 101.

> **3.    There is no evidence any of the limitations on the abstract concept identified by U.S. Bancorp were routine or conventional.**

The abstract-concept exclusion requires evaluation of whether the claims contain "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 132 S.Ct. at 1294). Restricting claims to "well-understood, routine, conventional activity previously engaged in by researchers in the field" is insufficient. *Mayo*, 132 S.Ct. at 1294. By statute, moreover, U.S. Bancorp—rather than the PTO or RCAMC—was burdened below with proving by a preponderance of the evidence that a proposition of invalidity is true. AIA Section 18(a)(1); 35 U.S.C. § 326(e). U.S. Bancorp was also required to have identified in its petition, in writing and with particularity:

> the evidence that supports the grounds for the challenge to each claim, including—(A) copies of patents and printed publications that the Appellee relies upon in support of the petition; and (B) affidavits or declarations of supporting evidence and opinions, if the Appellee relies on other factual evidence or on expert opinions . . . .

AIA Section 18(a)(1); 35 U.S.C. § 322.

U.S. Bancorp concedes there are numerous limitations in the claims of the '582 patent on the abstract concept it identified. (A72-73). Again, U.S. Bancorp even contends it is able to practice the so-called abstract concept while not practicing some of these claim limitations.[7] Thus, there is no dispute every claim at issue in the '582 patent contains substantive limitations on what U.S. Bancorp alleges is the involved abstract concept. Yet, there is not a scintilla of evidence from which a finding can be made that these substantive limitations on the '582 patent claims would have been routine or conventional. Indeed, the only document cited in U.S. Bancorp's argument the claims are invalid was the '582 patent itself. (A72-78). The '582 patent is not evidence of whether each of the indisputably substantive limitations on the abstract concept[8] would have been routine or conventional, nor are there any admissions in the '582 patent that could be used to satisfy U.S. Bancorp's burden of proving these substantive limitations were routine

---

[7] *See supra* Part III.C.2.

[8] The limitations on the claims of the '582 patent are not limited to generic computer functionality, such as in *Alice*, 134 S. Ct. at 2354-55. So, U.S. Bancorp and the PTAB's citation to portions of the specification of the '582 patent in which reference is made to known and existing technologies is misplaced.

and conventional. The only thing U.S. Bancorp can point to is argument, which is tantamount to no evidence at all.

Neither the PTAB nor the U.S. Bancorp can make core factual conclusions related to patentability, such as whether limitations on the identified abstract concept were routine and conventional, based on their own understanding, experience, or convenience—or on their assessment of what would be basic knowledge or common sense. Instead, there must be some concrete evidence in the record to support these findings. *See In re Zurko*, 258 F.3d 1379, 1386 (Fed. Cir. 2001); *see also K/S Himpp v. Hear-Wear Technologies, LLC*, 751 F.3d 1362, 1366 (Fed. Cir. 2014) ("The Board's decision was correct because an assessment of basic knowledge and common sense as a replacement for documentary evidence for core factual findings lacks substantial evidence support"). Here, there is no evidence. And for this additional reason, there is no support for finding any claim of the '582 patent falls within the scope of the abstract-concept exclusion to patent eligibility; indeed, there was no basis for instituting a CBM review in the first instance.

### 4.  The PTAB fails to address substantive limitations on the claims of '582 patent.

The absence of evidence to support the PTAB's ruling is aggravated further by the fact its decision does not even address some of the substantive limitations on the claims of the '582 patent. For example, as noted above, U.S. Bancorp

cannot dispute the limitation of basing the monetary benefit provided at least in part on the present value of a designated portion of future retirement benefits is a substantive limitation on the claims. This substantive limitation was noted in RCAMC's preliminary response and owner's response, but the PTAB failed to address it. Thus, there is no support for an argument this limitation was merely routine and conventional.

Another critical aspect of the invention of the '582 patent is the limitation that the benefit provider be reimbursed from resources other than future retirement payments in the event transfer of those benefits from the depository to the benefit provider are curtailed, such as a result of the beneficiary's own choice to revoke participation. Yet, neither U.S. Bancorp nor the PTAB even contend this limitation was conventional and routine, much less identify any supporting evidence. Again, there is no evidence support the PTAB's finding the limitations in the '582 patent claims on the abstract concept identified by U.S. Bancorp were merely routine, conventional activity.

## IV. THE BOARD ERRED IN CONSTRUING THE TERM "DEPOSITED" AS USED IN THE METHOD CLAIMS

As already noted, the apparatus claims of the '582 patent are eligible machines under § 101 because they contain means-plus-function limitations that

U.S. Bancorp cannot dispute satisfy 35 U.S.C. § 112, ¶ 6.[9]   And RCAMC has already established above the method claims of the '582 patent are not excluded from eligibility.   No further showing is necessary to affirm the validity of the claims because this is not an instance where a patentee is attempting to patent an otherwise patent-ineligible process simply for reciting a general-purpose computer. Nevertheless, RCAMC is compelled to address the PTAB's determination the steps of the method claims "could be performed as a series of verbal transactions exchanging physical money or via pen and paper." (A16).   The PTAB's finding is dependent on its construction of "deposited" as used in the method claims as not requiring "direct deposit" or any other computerized implementation.   The Board's construction is erroneous.

Method claim 1 requires the step of "causing said future retirement payments to be deposited into said account" immediately *after* identifying the step of requiring an account to *receive* future retirement payments payable *from a source* of said retirement payments.   The direct tie between receiving from the source and depositing in the context of this patent shows that "deposited" as used in Claim 1 should be interpreted to mean "deposited via direct deposit".[10]

This conclusion is underscored by the rule that terms must be interpreted in light of the specification.  *See In re Bond*, 910 F.2d 831, 833 (Fed. Cir. 1990).  And

---

[9] *See supra* Part III.A.

[10] "Deposited" as used in claims 1 and 18 should be given the same interpretation.

while it is improper to import claim limitations from the specification, "reading a claim in light of the specification, to thereby interpret limitations explicitly recited in the claim, is a quite different thing from 'reading limitations of the specification into a claim,' to thereby narrow the scope of the claim by implicitly adding disclosed limitations which have no express basis in the claim." MANUAL OF PATENT EXAMINING PROCEDURE § 2111 (quoting *In re Prater*, 415 F.2d 1393, 1404-05 (C.C.P.A. 1969)).  Each time the specification discusses the designated account and (the means for) causing future retirement payments to be deposited into the account, the specification clearly and explicitly describes a direct deposit account and the method of direct deposit:

| A financial institution is designated to be a direct depository | Abstract |
|---|---|
| To participate in the inventive financial program, each recipient or "beneficiary" of retirement payments agrees to the designation of a specified financial institution to serve as (1) **the direct depository of the beneficiary's retirement payments,** and (2) the disbursement agent of a predetermined portion of such payments from the beneficiary's individual deposit account over the designated term of the program. | Summary, Col. 1: 60-67.  (A30). |
| Participation in the financial program according to the present invention begins when the beneficiary elects to become a party to a multi-party arrangement for a preselected period of time (e.g., five years) among the funding source, or the asset provider, or the service provider, and **a** | Col. 3: 29-38.  (A31). |

| | |
|---|---|
| **financial institution designated to act as both a direct depository for a beneficiary's retirement payments** and as a disbursement agent for transferring a predetermined portion of the retirement funds in the beneficiary's individual deposit account to the funding source or asset or service provider. | |
| Benefits **source 12** of system **10** disburses retirement payments **directly** to an individual **direct deposit** account **14** in a designated depository **16**. Preferably, this is accomplished utilizing the well-known technique of **electronic funds transfer**. | Col. 5: 18-22.  (A32). |
|  | Figure 1.  (A27). |
|  | Figure 2.  (A28). |
|  | Figure 3.  (A29). |

Moreover, as noted above, method Claim 1 itself requires an account in a depository for a beneficiary to *receive* future retirement payments *payable to said beneficiary from a source* of said retirement payments. Even the broadest reasonable interpretation of "depositing" as used in the method claims, therefore, would be "depositing via direct deposit." There is no evidence of any other manner in which retirement payments can be deposited in an account from a source of retirement payments. Thus, no matter what claim construction standard is utilized in a CBM proceeding,[11] the claims of the '582 patent require future retirement payments be deposited via direct deposit into a beneficiary's account.

The only method of direct deposit disclosed in the specification of the '582 patent is electronic funds transfer, which obviously is not a purely mental process. The inventors of the '582 patent do not claim to have invented electronic funds transfer, but do contend its use in the '582 patent adds to the value of the particular machines and processes claimed here. It is therefore unsurprising the specification of the '582 patent discloses that the invention "utilizes known computer capabilities and electronic communication links to effect the automated implementation of various aspects of the inventive financial program, for example, to carry out the electronic transfer of funds into and out of the individual deposit account of a program participant." Col. 2:30-35 (A30).

---

[11] *i.e.*, broadest reasonable interpretation standards versus the standard set forth in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc).

39

That electronic funds transfer was known is not, as U.S. Bancorp contends, evidence that a computer is not necessary to the claims of the '582 patent. The fact electronic funds transfer technology existed is no evidence that such technology does not require a computer and is not tied to a particular apparatus.  For U.S. Bancorp to say otherwise is *ipse dixit*.   To the contrary, direct deposit via electronic funds transfer cannot be accomplished but for the use of a computer, and electronic funds transfer is not an action that can be performed in the human mind or by a human using a pen and paper.

Particularly in view of the fact U.S. Bancorp is burdened with actually proving its invalidity proposition, U.S. Bancorp's numerous unsubstantiated arguments concerning the integration of computers with the '582 patent claims are a misguided substitute for substance.  U.S. Bancorp surmises Claim 1 fails the machine prong of the machine-or-transformation test[12], but the entirety of U.S. Bancorp's argument is as follows:

> The only disclosure of a computer in the '582 patent specification is of "known" or "existing" computer "capabilities," suggesting that any general purpose computer will suffice. (*See* A30, 32). Claim 1 is thus the computer implementation of an otherwise purely mental process that could be performed without the use of a computer, and therefore fails to meet the "machine" prong of the machine or transformation test. (A935). This argument is illogical,

---

[12] The machine or transformation test clearly is no longer dispositive of patent eligibility. Nevertheless, it remains an "important clue [or] an investigative tool." *Bilski*, 130 S. Ct. at 3227.

> unsubstantiated, and insufficient to show that the machine or transformation test is not satisfied.

(A75).  This argument is illogical, unsubstantiated, and insufficient to show the machine or transformation test is not satisfied.  To begin with, portions of the specification cited in U.S. Bancorp's above-quoted argument itself states, "system 10 utilizes existing computer capabilities, both hardware and software, and electronic communication links, for example, to effect electronic funds transfers to and from the beneficiary's individual deposit account." (A32).  Based on this disclosure, U.S. Bancorp incredibly, and wrongly, surmises, "[c]laim 1 is thus the computer implementation of an otherwise purely mental process that could be performed without the use of a computer."  (A75).  U.S. Bancorp's allegation is wholly unsubstantiated speculation.  It is attorney argument that is not entitled to consideration—and it is wrong.

It is obvious that use of the terms "known" and "existing" are in no way proof that "any general computer will suffice".  Again, U.S. Bancorp concedes the specification in fact states, for example: "[S]ystem utilizes existing computer capabilities, both hardware and software, and electronic communication links, for example, to effect electronic funds transfers to and from the beneficiary's individual deposit account." (A32).  A computer programmed with software to

effect electronic funds transfers is totally inconsistent with U.S. Bancorp's suggestion "any general computer will suffice."[13]

A computer is integral to the challenged method claims. While "adding a 'computer aided' limitation to a claim covering an abstract concept, *without more*, is insufficient to render the claim patent eligible," *Dealertrack*, 674 F.3d at 1333 (emphasis added), here there very clearly is "more"—the novel, nonobvious, not routine, and not conventional substantive limitations on creating a source of funds based on future retirement or Social Security payments. In addition, the claims here are not "silent as to how a computer aids the method, the extent to which a computer aids the method, or the significance of a computer to the performance of the method." *Id.* A computer is at least necessary to cause the direct deposit of future retirement and Social Security payments from the benefit source (*e.g.*, the U.S. government) to a depository designated by a beneficiary and to direct funds to a provider of current benefits.

The § 101 eligibility filter as to the method claims is therefore cleared by showing the challenged '582 patent method claims contain substantive limitations such that they do not monopolize the identified abstract concept. That test is satisfied in the case of the '582 patent without regard to U.S. Bancorp's arguments

---

[13] Of course, Appellee failed to submit any expert testimony or other evidence relevant to the views of one of ordinary skill in the art to which RCAMC could respond.

concerning the involvement of a computer in the claims.  Nevertheless, it is clear that a computer is required to implement the challenged method claims of the '582 patent.

## CONCLUSION

Because § 101 is not a condition for patentability under the Patent Act, the PTAB exceeded its authority when it granted CBM review.  And even if it had jurisdiction to conduct a CBM review on the basis of § 101, it erred on the merits by incorrectly concluding the '582 patent falls within the scope of the abstract concept exception to patentability.

For the reasons discussed in detail above, this Court should reverse the PTAB's final written decision, and hold: (1) the PTAB lacked authority to adjudicate U.S. Bancorp's petition; or alternatively, (2) the claims of the '582 patent recite patent-eligible subject matter.

Dated: December 9, 2014                     Respectfully submitted,

*/s/ Casey L. Griffith*
Casey L. Griffith
Klemchuk Kubasta LLP
8150 North Central Expressway, 10th Floor
Dallas, Texas 75206
(214) 367-6000 (Telephone)
(214) 367-6001 (Facsimile)
casey.griffith@kk-llp.com

*Counsel for Plaintiff-Appellant*
*Retirement Capital Access Management*
*Company LLC*

43

# ADDENDUM

# TABLE OF CONTENTS

**Addendum Page**

Final Written Decision of
The Honorable Trenton A. Ward
        filed August 22, 2014 ............................................................................Add. 1

Trials@uspto.gov                                                                    Paper No. 33
571.272.7822                                                        Entered:  August 22, 2014

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

U.S. BANCORP,
Petitioner,

v.

RETIREMENT CAPITAL ACCESS MANAGEMENT COMPANY,
Patent Owner.
_____

Case CBM2013-00014
Patent 6,625,582 B2
_____

Before GLENN J. PERRY, THOMAS L. GIANNETTI, and
TRENTON A. WARD, *Administrative Patent Judges*.

WARD, *Administrative Patent Judge*.

FINAL WRITTEN DECISION
*35 U.S.C. § 328(a) and 37 C.F.R. § 42.73*

## I. BACKGROUND

On June 22, 2012, Retirement Capital Access Management Company ("Patent Owner") and Benefit Funding Systems LLC sued U.S. Bancorp ("Petitioner") for infringement of U.S. Patent No. 6,625,582 ("the '582 patent") (Ex. 1003) in the District Court for the District of Delaware in *Benefit Funding Systems LLC, et al. v. U.S. Bancorp*, Case No 1:12-cv-803-LPS (D. Del. filed June 22, 2012). *See* Paper 7, 2.

On March 29, 2013, Petitioner filed a Petition requesting a review of the '582 patent under the transitional program for covered business method patents, asserting that claims 1, 13, 14, 18, 30, and 31 are directed to unpatentable subject matter under 35 U.S.C. § 101. Paper 4. Patent Owner filed a Preliminary Response on July 2, 2013. Paper 10. We determined that Petitioner sufficiently demonstrated it was more likely than not that the challenged claims were unpatentable, and we instituted a trial on September 20, 2013. Paper 12, Decision to Institute ("Dec.").

Patent Owner filed a Response on November 20, 2013, arguing that 35 U.S.C. § 101 is not reviewable in a covered business method review and that the challenged '582 patent claims are patentable. Paper 19 ("PO Resp."). Petitioner filed a Reply on January 21, 2014. Paper 23 ("Reply"). Both Patent Owner and Petitioner requested an oral hearing under 37 C.F.R. § 42.70(a). Paper 24; Paper 26. The oral hearing was held on April 1, 2014, a transcript of which appears in the record. Record of Oral Hearing, Paper 32 ("Tr.").

CBM2013-00014
Patent 6,625,582 B2

## II. THE '582 PATENT

The '582 patent generally relates to a method for enabling recipients of Social Security payments to convert a designated portion of future payments into currently available financial resources.  Ex. 1003, col. 1, ll. 1–5; 52–56.  The patent explains that the beneficiary may access current capital through a funding source in exchange for payment of a predetermined portion of the beneficiary's future retirement benefits.  *Id*. at col. 3, ll. 20–28.  Figure 2 of the '582 patent, reproduced below, illustrates the steps of the method:



As shown above in Figure 2, the beneficiary first elects participation in the program in step 24 and then designates a financial institution to act as the depository for the beneficiary's retirement payments and a disbursement

agent for such retirement payments in step 26. *Id*. at col. 5, ll. 34–39. Step 30 involves designating a bank, insurance company, or other source of capital to be the funding source of current capital provided to the beneficiary. *Id*. at col. 5, ll. 43–46. Capital then is paid to the beneficiary from the funding source in an amount based in part upon the present value of a designated portion of the beneficiary's future retirement payments in step 34. *Id*. at col. 5, ll. 53–56. Step 36 involves directly depositing a future retirement benefit into the beneficiary's deposit account, and then a predetermined portion of this benefit is disbursed automatically to the funding source in step 38. *Id*. at col. 6, ll. 60–65. Step 42 involves a possible premature termination of participation in the program, in which the beneficiary may become obligated to reimburse the funding source for any advance from resources other than the future retirement benefits. *Id*. at col. 6, ll. 7–12.

Claim 1, illustrates the claimed subject matter and is reproduced below:

> 1. A computerized method for creating a source of funds based on present value of future retirement payments, comprising the steps of:
>
> a. designating an account in a depository for a beneficiary to receive future retirement payments payable to said beneficiary from a source of said retirement payments for a preselected period of time;
>
> b. designating a benefit provider for providing a monetary benefit to said beneficiary;
>
> c. authorizing said depository to periodically disburse a predetermined portion of said

retirement payments deposited in said account to said benefit provider during said preselected period of time;

d.  providing said monetary benefit to said beneficiary from said benefit provider based at least in part on present value of a designated portion of said future retirement payments without encumbering said beneficiary's right to said future retirement payments and without violating legislated proscriptions in the United States against alienation of future retirement benefits;

e.  causing said future retirement payments to be deposited into said account throughout said preselected period of time;

f.  causing said depository to transfer a portion of said retirement payments deposited into said account to said benefit provider during said preselected period of time; and

g.  reimbursing said benefit provider from resources other than said future retirement payments if said transfer of a portion of said retirement payments from said depository to said benefit provider are curtailed prior to said end of said preselected period of time, and making said retirement payments available for the exclusive use of said beneficiary.

CBM2013-00014
Patent 6,625,582 B2

## III. ANALYSIS

### A.    *Claim Construction*

Consistent with the statute and the legislative history of the AIA,[1] the Board will interpret claims using the broadest reasonable construction. *See Office Patent Trial Practice Guide*, 77 Fed. Reg. 48,756, 48,766 (Aug. 14, 2012); 37 C.F.R. § 42.100(b). There is a "'heavy presumption'" that a claim term carries its ordinary and customary meaning. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) (Internal citation omitted).

Patent Owner argues that the "means for causing said future retirement payments to be deposited into said account" limitation of system claim 13, and the similar "means for" limitation of system claim 30,[2] should be construed to require an "electronic funds transfer" because "direct deposit via electronic funds transfer is *the* structure disclosed in the specification for causing retirement payments (or Social Security retirement benefits) to be deposited." PO Resp. 29 (citing Ex. 1003, col. 5, ll. 18–22) (emphasis in original). Patent Owner also argues that method claims 1 and 18 should be construed similarly, and thus the term "deposited" in claims 1 and 18 should be construed to mean "deposited via direct deposit." *Id*. at 30.

Petitioner disagrees, and argues that the claimed invention may be "performed on pen and paper, as consumers were able to deposit Social Security or retirement payments long before computers." Reply 6.

---

[1] Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011) ("AIA").

[2] Claim 30 recites "means for causing said future payments *of Social Security benefits* to be deposited into said account during said preselected period of time." (emphasis added).

6

CBM2013-00014
Patent 6,625,582 B2

Petitioner further argues that with respect to claim interpretation, the United States Court of Appeals for the Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Id.* at 7 (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005)).

To construe means-plus-function language in a claim, one "must look to the specification and interpret that language in light of the corresponding structure, material, or acts described therein, and equivalents thereof, to the extent that the specification provides such disclosure." *In re Donaldson Co., Inc.*, 16 F.3d 1189, 1193 (Fed. Cir. 1994) (en banc). More particularly, to construe properly the limitations in claims 13 and 30 reciting a "means for causing said future retirement payments . . . to be deposited into said account," the limitations "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6.[3] As noted by Patent Owner (PO Resp. 29), the corresponding structure within the specification supporting the means-plus-function limitation states the following: "[b]enefits source 12 of system 10 disburses retirement payments directly to an individual direct deposit account 14 in a designated depository 16. Preferably, this is accomplished utilizing the well-known technique of electronic funds transfer." Ex. 1003, col. 5, ll. 18–22. Accordingly, we construe "means for causing . . . to be deposited into said account," recited in claims 13 and 30, to mean "disbursing directly to said account utilizing an electronic funds transfer."

---

[3] Section 4(c) of the AIA re-designated 35 U.S.C. § 112, ¶ 6, as 35 U.S.C. § 112(f). Because the '582 patent has a filing date before September 16, 2012 (effective date), we will refer to the pre-AIA version of § 112.

CBM2013-00014
Patent 6,625,582 B2

Unlike the means-plus function claims, we are not persuaded by Patent Owner's argument that the term "deposited" in method claims 1 and 18 should similarly be interpreted to mean "deposited via direct deposit." PO Resp. 30–33. Patent Owner fails to point to any support in the specification of the '582 patent that would require the construction of the term "deposited" to mean a direct deposit or electronic funds transfer. If an inventor acts as his or her own lexicographer, the definition must be set forth in the specification with reasonable clarity, deliberateness, and precision. *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998). The specification of the '582 patent does not set forth expressly a definition of "deposited." In fact, as cited above, the '582 patent states that deposits are "*[p]referably*" conducted with the "well-known technique of electronic funds transfer," but the specification does not limit the term "deposited" to this implementation. Ex. 1003, col. 5, ll. 20–22 (emphasis added). Even in cases where the specification describes only a single embodiment, the claims are not necessarily limited to that embodiment. *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (It is not enough that the only embodiment, or all of the embodiments, contain a particular limitation to limit a claim to that particular limitation.). Here, the specification itself indicates that electronic deposits are preferable, but not required. Therefore, we do not adopt Patent Owner's proposed construction of "deposited" recited in claims 1 and 18 as limited to "deposited via direct deposit."

8

CBM2013-00014
Patent 6,625,582 B2

>    B.    *Patent Owner's Arguments that Section 101 Is Not a Proper*
>          *Ground Upon Which a Covered Business Method Patent*
>          *Review May Be Maintained*

Patent Owner argues that covered business method patent review is limited under the 35 U.S.C. § 282(b) to "conditions for patentability." PO Resp. 37–38.  Furthermore, Patent Owner argues the determination of patent eligibility under 35 U.S.C. § 101 is not a condition for patentability, such as those set forth in 35 U.S.C. §§ 102–103.  *Id*. at 38–44.  We disagree.

Under the AIA, any ground that could be raised under 35 U.S.C. § 282(b)(2) or (3) can be raised in a post-grant review or (with exceptions not relevant here) in a covered business method review.  *See also* 35 U.S.C. § 321(b); AIA §18(a)(1).  The grounds under § 282(b)(2) and (3) are:

>    (2) Invalidity of the patent or any claim in suit on any ground specified in part II as a condition for patentability.
>    (3) Invalidity of the patent or any claim in suit for failure to comply with—
>    (A) any requirement of section 112, except that the failure to disclose the best mode shall not be a basis on which any claim of a patent may be canceled or held invalid or otherwise unenforceable; or
>    (B) any requirement of section 251.

As recognized by the Supreme Court, § 101 is a condition for patentability. In *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 12 (1966), the Supreme Court stated that the 1952 Patent Act "sets out the conditions of patentability in three sections," citing 35 U.S.C. §§ 101, 102, and 103.  The Supreme Court has also addressed invalidity under § 101 when it was raised as a defense to an infringement claim under § 282.  *See Mayo Collaboration Servs. v. Prometheus Labs, Inc.*, 132 S.Ct. 1289, 1293 (2012).  The Federal Circuit has also recognized that § 101 is a condition for patentability that can be raised as an affirmative defense under 35 U.S.C. § 282(b)(2).  For

9

CBM2013-00014
Patent 6,625,582 B2

example, in *Dealertrack, Inc. v. Huber*, the majority rejected the dissent's contention that §101 is not a "condition for patentability," stating that "the 'defenses provided in the statute' § 282, include not only the conditions of patentability in §§ 102 and 103, but also those in § 101." 674 F.3d 1315, 1330 n.3 (Fed. Cir. 2012) (citing *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech*., 543 F.3d 657, 661 (Fed. Cir. 2008)) ("It has long been understood that the Patent Act sets out the conditions for patentability in three sections: sections 101, 102, and 103.").

The legislative history of the AIA also makes it clear that Congress intended the Office to consider challenges brought under § 101 for post-grant reviews. For example, with certain exceptions not relevant here, the covered business method patent review program employs the same standards and procedures as the post grant review program. AIA § 18(a)(1). The specified purpose of the covered business method review program was to allow the Office to revisit business method patents post-*Bilski* and evaluate whether the patents were too abstract to be patentable under § 101. *See* 157 Cong. Rec. S1367 (daily ed. Mar. 8, 2011). Accordingly, we are not persuaded by Patent Owner's argument that 35 U.S.C. § 101 is not a proper ground upon which a covered business method patent review may be maintained.

    C.    *35 U.S.C. § 101 Patentability Analysis*

        1.    Overview

Section 101 of the Patent Act defines subject matter eligibility and the Supreme Court has "long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347,

2354 (2014) (citing *Assoc. for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S.Ct. 2107, 2116 (2013) (internal quotation marks and brackets omitted)). "The 'abstract ideas' category embodies the longstanding rule that '[a]n idea of itself is not patentable.'" *Alice Corp.*, 134 S.Ct. at 2355 (citing *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972) (quotations omitted)).

In *Alice Corp.,* the Supreme Court emphasized the "*Mayo* framework," which provides "a framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Id.* (citing *Mayo*, 132 S.Ct. at 1298). Under the *Mayo* framework, "[w]e must first determine whether the claims at issue are directed to a patent-ineligible concept." *Id.* Next, "we consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (citing *Mayo*, 132 S.Ct. at 1297–1298). To be patentable, a claim must do more than simply state the law of nature or abstract idea and add the words "apply it." *Mayo*, 132 S.Ct. at 1294; *Benson*, 409 U.S. at 67. Furthermore, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice Corp.*, 134 S.Ct. at 2358. "Thus, if a patent's recitation of a computer amounts to a mere instruction to 'implemen[t]' an abstract idea 'on . . . a computer,' that addition cannot impart patent eligibility." *Id.* (internal citation omitted).

A challenged claim, properly construed, must incorporate enough meaningful limitations to ensure that it claims more than just an abstract idea and not just a mere "'drafting effort designed to monopolize the [abstract idea].'" *Alice Corp.*, 135 S.Ct. at 2357 (quoting *Mayo*, 132 S.Ct. at 1297).

CBM2013-00014
Patent 6,625,582 B2

"Simply appending conventional steps, specified at a high level of generality," is not "*enough*" for patent eligibility. *Id.* (quoting *Mayo*, 132 S.Ct. at 1292). Thus, we analyze the claims to determine whether the claims embody a patent-eligible application of an abstract idea or merely nothing more than the abstract idea itself.

> 2.    Claims 1, 13, 14, 18, 30, and 31 are not meaningfully limited under 35 U.S.C. § 101

Petitioner challenges claims 1, 13, 14, 18, 30, and 31 as unpatentable under 35 U.S.C. § 101. Pet. 8. Patent Owner disagrees, and argues, *inter alia*, that the claims are not directed to an abstract idea because they include meaningful limitations that "cover less than the identified abstract concept." PO Resp. 16.

In accordance with the Supreme Court's "framework for distinguishing patents that claim . . . abstract ideas from those that claim patent-eligible applications of those concepts," we must first "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice Corp.*, 132 S.Ct. at 2355. In *Alice Corp.*, the Supreme Court determined that the claims at issue were "drawn to the concept of intermediated settlement," i.e., the use of a third party to mitigate settlement risk. *Id.* Furthermore, the Supreme Court determined that "[l]ike the risk hedging in *Bilski* [*v. Kappos*, 561 U.S. 593 (2010)], the concept of intermediated settlement is 'a fundamental economic practice long prevalent in our system of commerce.'" *Alice Corp.*, 132 S.Ct. at 2356 (citations omitted). With respect to the first step of the "*Mayo* framework," the Supreme Court concluded in *Alice Corp.* that "there is no meaningful distinction between the concept of risk hedging in *Bilski* and the concept of

CBM2013-00014
Patent 6,625,582 B2

intermediated settlement" in *Alice Corp.* and that "[b]oth are squarely within the realm of 'abstract ideas' as we have used that term." *Alice Corp.*, 132 S.Ct. at 2357. Here, Petitioner argues that Patent Owner's claims are directed to the abstract concept of advancing funds based on future retirement payments. Reply 4. Patent Owner does not disagree. Tr. 40 (Patent Owner's counsel stated at the oral hearing that Patent Owner is "happy to accept what [Petitioner] claim[s] is the abstract concept."). Similar to the concept of intermediated settlement in *Alice Corp.* and the concept of risk hedging in *Bilski*, we find that the concept of advancing funds based on future retirement payments is an economic practice long prevalent in our system of commerce and squarely within the realm of abstract ideas.

Step two of the Supreme Court's "*Mayo* framework" requires that we consider the elements of the claim and determine whether there is an "element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice Corp.*, 132 S.Ct. at 2355 (quoting *Mayo*, 132 S.Ct. at 1294). Patent Owner states that claim 1 requires providing a monetary benefit "without encumbering said beneficiary's right to said future retirement payments and without violating legislated proscriptions in the United States against alienation of future retirement benefits," and argues that these are meaningful and substantive limitations that cause the claims to cover less than the identified abstract concept. PO Resp. 16. Patent Owner presents similar arguments with respect to the similar limitations recited in independent claims 13, 18, and 30. *Id.*

CBM2013-00014
Patent 6,625,582 B2

Petitioner disagrees and argues that the "without encumbering"
recitation in each claim requires only that the transaction be lawful, and,
thus, only theoretical illegal methods of advancing future retirement benefits
are excluded from the abstract concept. Reply 5. We agree. Requiring that
a transaction be lawful is a routine and conventional practice in business
transactions. The Supreme Court has provided guidance that "simply
appending conventional steps, specified at a high level of generality, to laws
of nature, natural phenomena, and abstract ideas cannot make those laws,
phenomena, and ideas patentable." *Mayo*, 132 S.Ct. at 1300. Furthermore,
the argued limitation in claim 1 is recited at a high level of generality, as
neither the claims themselves nor the specification provide any guidance as
to how the "without encumbering" step is performed. Therefore, we
determine the "without encumbering" limitation is a conventional and highly
generalized step that does not meaningfully limit the claims beyond the
abstract idea.

We note that the preamble for claims 1 and 18 both recite a
"computerized method."[4] "[A] preamble does not limit claim scope if it
'merely states the purpose or intended use of an invention.'" *Digitech Image
Technologies, LLC v. Electronics for Imaging, Inc.*, Case No. 2013-1600,
2014 WL 3377201 at *5 (Fed. Cir. 2014) (affirming a finding that the
recitation of a "digital image reproduction system" in the preamble of the
claims did not limit the claims and that the claims were directed to a patent

---

[4] The preamble of claim 1 recites: "A computerized method for creating a
source of funds based on present value of future retirement payments." The
preamble of claim 18 recites: "A computerized method for creating a source
of funds based on present value of future Social Security retirement
benefits."

CBM2013-00014
Patent 6,625,582 B2

ineligible abstract idea) (quoting *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed.Cir.2006)).  Here, the recitation of "computerized method" in the preamble of claims 1 and 18 merely states the intended use of the claimed invention and does not provide any antecedent basis for limitations in the body of the claim.  *Catalina Mktg. Intl., Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (preamble is not limiting "where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.") (quotations omitted).  Therefore, we determine that use of "computerized method" in the preamble of claims 1 and 18 does not meaningfully limit the claims.

Petitioner argues that the challenged claims can be performed using pen and paper.  Pet. 33; Reply 6.  Patent Owner argues that the claims of the '582 patent are not directed towards purely mental processes because the claims require the use of a computer.  PO Resp. 29.  More particularly, Patent Owner argues that a computer is integral to the claims, and must be viewed in light of the other substantive limitations including creating a source of funds based on future retirement payments, such as Social Security.  *Id*. at 36.  Patent Owner further argues that the computer required by the claims is not a general purpose computer because the electronic funds transfer requires programming a computer with particular software. *Id.* at 35.

Petitioner counters that Patent Owner's arguments improperly attempt to import limitations from the specification into the claims.  Reply 6. Petitioner further argues that even if method claims 1 and 18 were construed to be limited to direct deposits, such a reading only would require a

15

CBM2013-00014
Patent 6,625,582 B2

computer as an obvious mechanism to increase efficiency. *Id*. at 7 (citing *Bancorp Servs., L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1279 (Fed. Cir. 2012)).

With respect to method claims 1 and 18, as noted above, we decline to construe "deposited" as requiring "direct deposit" or any computerized implementation. Furthermore, we determine that the steps of method claims 1 and 18 could be performed as a series of verbal transactions exchanging physical money or via pen and paper. In *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372, 1373 (Fed. Cir. 2011), the Federal Circuit determined that the method claims there, directed to fraud determination, "can be performed in the human mind, or by a human using a pen and paper" and "a method that can be performed by human thought alone is merely an abstract idea and is not patent-eligible under § 101."

Additionally, we conclude that the "deposited" limitation of claims 1 and 18 does not provide a meaningful limitation to the abstract idea. Nonetheless, even if the "deposited" limitation of method claims 1 and 18 of the '582 patent were read to require a computer, the use of a computer to perform direct deposit with electronic funds transfer "simply performs more efficiently what could otherwise be accomplished manually." *Bancorp*, 687 F.3d at 1279. Contrary to Patent Owner's assertions that the '582 patent invention requires specialized hardware and software, the '582 patent states that the "present invention utilizes *known computer capabilities* and electronic communications links to effect the automated implementation of various aspects of the inventive financial program, for example, to carry out the electronic transfer of funds into and out of the individual deposit account of a program participant." Ex. 1003, col. 2, ll. 30–35 (emphasis added). As

16

the Supreme Court held in *Gottschalk v. Benson*, 409 U.S. 63 (1972), claims do not become patent-eligible under § 101 simply for reciting a known, general purpose computer. *See id*. at 67 (invalidating as patent-ineligible claimed processes that "can be carried out in existing computers long in use, no new machinery being necessary," or "can also be performed without a computer."). In *Alice Corp.*, the Supreme Court determined that "the claims at issue amount to 'nothing significantly more' than an instruction to apply the abstract idea of intermediated settlement using some unspecified, generic computer." *Alice Corp.*, 132 S.Ct. at 2360 (quoting *Mayo*, 132 S.Ct. at 1298). Similarly, we conclude that even if we were to construe the "deposited" limitation of claims 1 and 18 to require a computer, the claims amount to nothing significantly more than an instruction to apply the abstract idea of advancing funds based on future retirement payments using an unspecified, generic computer. Accordingly, we conclude that claims 1 and 18 do not add meaningful limitations beyond the recited abstract idea.

Unlike method claims 1 and 18, claims 13 and 30 are system claims that include the means-plus-function limitation of "means for causing . . . to be deposited into said account." As discussed above, we construe these means limitations to require "disbursing directly to said account utilizing an electronic funds transfer." In *Alice Corp.*, the Supreme Court concluded that the system claims were not patentable for substantially the same reasons as the method claims because "system claims recite a handful of generic computer components configured to implement the same idea" as the method claims. *Alice Corp.*, 132 S.Ct. at 2360. The Supreme Court has warned that a "draftsman's art" should not trump the prohibitions against

17

CBM2013-00014
Patent 6,625,582 B2

patenting abstract ideas. *See Alice Corp.*, 132 S.Ct. at 2359 (citing *Mayo*, 132 S.Ct. at 1294 (quoting *Parker v. Flook*, 437 U.S. 584, 593 (1978))).

We determine that system claims 13 and 30 are directed to the same abstract idea as method claims 1 and 18. Furthermore, the means-plus function limitations merely require "utilizing the *well-known* technique of electronic funds transfer." Ex. 1003, col. 5, ll. 21–22 (emphasis added). Accordingly, as to these claims, we conclude that the use of a computer in a generalized fashion to increase efficiency does not meaningfully limit an otherwise abstract claim. *See, e.g.*, *id.*; *Gottschalk*, 409 U.S. at 67; *Bancorp*, 687 F.3d at 1279. Dependent claims 14 and 31, which recite "wherein the benefit provider is a source of capital," also do not meaningfully limit the claims.

Patent Owner argues that Petitioner has not provided sufficient factual evidence to support unpatentability and that a § 101 analysis requires factual inquiries into the nature of the invention. PO Resp. 6–10. Patent Owner further argues that Petitioner fails to provide expert testimony to support its challenge. *Id.* Patent Owner contends that the only evidence pointed to by Petitioner is the '582 patent itself, which "is not evidence of whether each of the indisputably substantive limitations on the abstract concept would have been routine or convention[al]." *Id.* at 8.

Petitioner counters that the '582 patent describes easily understandable technology and, in such cases, expert testimony is not required. Reply 11 (citing *Lee v. Mike's Novelties, Inc.*, 543 Fed. Appx. 1010, 1015 (Fed. Cir. 2013) ("Expert testimony is not necessary in patent cases involving technology that is 'easily understandable.'") (internal citation omitted)). Petitioner further argues, in addition to the non-technical

18

CBM2013-00014
Patent 6,625,582 B2

nature of the claims, expert testimony is not required to determine "whether claims recite a computer limitation that provides a meaningful limitation." *Id*.

We agree with Petitioner. Neither the claims nor the specification provide complex technological implementations or modifications of these technologies. In fact, the '582 patent describes implementing electronic funds transfer and direct deposit by "utiliz[ing] *existing* computer capabilities" and "utilizing the *well-known* technique of electronic funds transfer." Ex. 1003, col. 5, l. 2; col. 5, ll. 21–22 (emphasis added). Furthermore, the "without encumbering" limitation encompasses an easily understood concept and recites no specific technological mechanism for achieving its result.

Patent Owner further argues Petitioner has not provided any evidence that the "without encumbering" limitation was routine or conventional. PO Resp. 19–20. Patent Owner argues that because the record does not contain such evidence, we have no basis to find that the "without encumbering" limitation was insignificant, conventional, or routine. *Id.* at 19. We are not persuaded by Patent Owner's argument because, as noted above, extrinsic or expert evidence may not be required for simple or easily understandable limitations like the "without encumbering limitation." The "without encumbering" limitation can generally be described as "complying with the United States laws and regulations," i.e., performing a transaction without breaking the law. *See* Ex. 1003, col. 1, ll. 47–48. Additionally, the specification fails to provide a technological solution for achieving the "without encumbering" result.

19

CBM2013-00014
Patent 6,625,582 B2

Patent Owner further argues that Petitioner's defense of non-infringement of the '582 patent in the related district court lawsuit shows that there may be non-infringing alternatives, and thus, there is no pre-emption because the claims of the '582 patent do not encompass the full scope of an abstract idea. PO Resp. 28 (citing *CLS Bank Int'l v. Alice Corp. Pty Ltd*., 717 F.3d 1269, 1282 (Fed. Cir. 2013)). Petitioner counters that the Federal Circuit has rejected the argument that a defendant cannot plead both non-infringement and invalidity under § 101. Reply 12 (citing *Bancorp*, 687 F.3d at 1280).

In *Bancorp*, the Federal Circuit stated that "[t]he Federal Rules permit a party to plead in the alternative," and thus, an "assertion of non-infringement does not detract from its affirmative defense of invalidity under § 101." *Bancorp*, 687 F.3d at 1280. Furthermore, we note that pre-emption is only one test to determine whether a claim is directed to an abstract idea.

A claim is not patent-eligible where it merely recites an abstract idea and adds additional steps that merely reflect routine, conventional activity of those of ordinary skill in the art. *See Mayo*, 132 S.Ct. at 1298. For the foregoing reasons, we determine that claims 1, 13, 14, 18, 30, and 31 of the '582 patent recite nothing more than abstract concepts that constitute non-patentable subject matter.

D.     *Petitioner's Motion to Exclude*

Petitioner filed a Motion to Exclude (Paper 25, "Mot. to Exclude") on February 2, 2014. The Motion to Exclude seeks to exclude Ex. 2016, a New York Times article titled, "Federal regulators are expected to crack down on short-term, high-cost credit offered by large banks like Wells Fargo and U.S.

20

CBM2013-00014
Patent 6,625,582 B2

Bank." Mot. to Exclude 1 (citing Ex. 2016). Petitioner alleges Ex. 2016 is inadmissible based on relevance, prejudice, and hearsay. *See Id.*

Ex. 2016 was not relied upon at the oral hearing and was not relied upon in reaching our decision. Accordingly, Petitioner's motion to exclude is dismissed as moot.

## IV. CONCLUSION

This is a final written decision of the Board under 35 U.S.C. § 328(a). We determine that claims 1, 13, 14, 18, 30, and 31 are unpatentable under 35 U.S.C. § 101.

## ORDER

In consideration of the foregoing, it is hereby:

ORDERED that claims 1, 13, 14, 18, 30, and 31 of the '582 patent are unpatentable;

FURTHER ORDERED that Petitioner's motion to exclude is dismissed as moot; and

FURTHER ORDERED that, because this is a final written decision, parties to the proceeding seeking judicial review of the decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

CBM2013-00014
Patent 6,625,582 B2

For Petitioner:

Anthony Son
Brian Pandya
Ryan Corbett
WILEY REIN LLP
ason@wileyrein.com
bpandya@wileyrein.com
rcorbett@wileyrein.com


For Patent Owner:

Casey Griffith
Shital Desai
KLEMCHUK KUBASTA LLP
casey.griffith@kk-llp.com
sita.desai@kk-llp.com

22

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 9th day of December, 2014, I caused this Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Anthony H. Son
ANDREWS KURTH, LLP
1350 I Street, NW
Washington, DC  20005
(202) 662-2784

*Counsel for Appellee*

Lore A. Unt
Stacy B. Margolies
Scott D. Weidenfeller
Associate Solicitors
United States Patent & Trademark Office
Mail Stop 8
Post Office Box 1450
Alexandria, Virginia  22313

*Attorneys for the Director of the United
States Patent and Trademark Office*

Upon acceptance by the Clerk of the Court of the electronically filed document, the required number of copies of the Brief of Appellant will be hand filed at the Office of the Clerk, United States Court of Appeals for the Federal Circuit in accordance with the Federal Circuit Rules.

/s/ Casey L. Griffith
*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*10,253*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>December 9, 2014</u>       <u>/s/ Casey L. Griffith</u>
                                      *Counsel for Appellant*