2015-1039

# In The
# United States Court of Appeals
# For The Federal Circuit

## RETIREMENT CAPITAL ACCESS MANAGEMENT COMPANY LLC,

*Appellant,*

v.

## U.S. BANCORP,

*Appellee.*

**APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**PATENT TRIAL AND APPEAL BOARD**
**IN CASE NO. CBM2013-00014**

————————————

## BRIEF OF APPELLEE

————————————

Anthony H. Son
Frederick S. Frei
Andrews Kurth LLP
1350 I Street, NW
Suite 1100
Washington, DC  20005
(202) 662-2700 (Telephone)
(202) 662-2739 (Fax)

Counsel for Appellee

# CERTIFICATE OF INTEREST OF U.S. BANCORP

Counsel for the U.S. Bancorp certifies the following:

1.     The full name of every party or amicus represented by me is:

<u>       U.S. Bancorp                                                                                  </u>

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

<u>       None                                                                                              </u>

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

<u>       None                                                                                              </u>

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Anthony H. Son
Brian H. Pandya
Matthew J. Dowd
Ryan M. Corbett
WILEY REIN LLP
1776 K Street NW
Washington, DC 20006
(202) 719-7000

Richard L. Horwitz
David Ellis Moore
Potter Anderson & Coroon LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19899
(302) 984-6000

Anthony H. Son
Frederick S. Frei
Andrews Kurth LLP
1350 I Street Suite 1100
Washington, D.C. 20005
(202) 662-2700

Date:  March 9, 2015

/s/ Anthony H. Son

Signature of counsel
Anthony H. Son

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES ................................................................ 1

STATEMENT OF JURISDICTION ................................................................ 1

STATEMENT OF THE ISSUES..................................................................... 2

STATEMENT OF THE CASE ........................................................................ 3

    I.     Overview of the '582 Patent ...................................................... 3

    II.    The Claims............................................................................... 6

    III.   Procedural Background............................................................. 8

STATEMENT OF THE STANDARD OF REVIEW...................................... 9

SUMMARY OF THE ARGUMENT ............................................................. 9

ARGUMENT................................................................................................ 11

    I.     THIS COURT DOES NOT HAVE JURISDICTION TO REVIEW THE PTAB'S DECISION TO INSTITUTE A CBM REVIEW ............. 11

    II.    THE STATUTORY LANGUAGE, CONTEXT, PURPOSE AND LEGISLATIVE HISTORY OF THE CBM REVIEW PROVISIONS, REINFORCED BY JUDICIAL PRECEDENT, COMPEL THE CONCLUSION THAT SECTION 101 IS AN AUTHORIZED GROUND OF CBM REVIEW ................................................. 12

        A.    Fundamental Rules of Statutory Construction Mandate Inclusion of Section 101 Issues in CBM Review ........................... 14

        B.    Section 101 Was an Integral Part of the AIA's Legislative History Which Demonstrates that Section 101 Was Intended to be Included in CBM Review........................................................... 24

    III.   THE ASSERTED CLAIMS ARE INVALID UNDER 35 U.S.C. § 101 ...................................................................................... 29

        A.    Legal Standards................................................................. 29

            1.    Preemption is Not Required for an Abstract Idea to be Unpatentable ...................................................... 35

            2.    Compliance with Section 112 is Not Relevant to the Section 101 Analysis........................................... 36

        B.    Method Claims 1 and 18 Are Invalid Under § 101 ........................ 37

i

C.   The Use of a Computer and the Electronic Transfer of Funds Are Not An Integral Component Of And Do Not Meaningfully Limit The Claims ............................................................................... 43

D.   System Claims 13, 14, 30, and 31 Are Invalid Under § 101 .......... 47

E.   RCAMC'S Remaining Arguments Are Unsound and Legally Irrelevant ............................................................................................ 50

   1.   Expert Testimony Is Unnecessary ......................................... 50

   2.   RCMAC's Failure To Explain How The Claimed Method Does Not Violate U.S. Law Indicates A Lack Of Meaningful Limitation ........................................................... 52

   3.   U.S. Bancorp's Non-Infringement Contentions Have No Bearing On The Section 101 Analysis ................................. 53

IV.   CONCLUSION ............................................................................................ 54

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alappat*,
  33 F.3d 1526 (Fed. Cir. 1992) ...........................................................37

*Alice Corp. v. CLB Bank Int'l*,
  134 S. Ct. 2347 (2014)...............................................................*passim*

*Application of Noll*,
  545 F.2d 141 (C.C.P.A. 1976); ..........................................................37

*Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*,
  543 F.3d 657 (Fed. Cir. 2008) ...........................................................21

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*,
  501 U.S. 104 (1991)...........................................................................19

*Bailey v. United States*,
  516 U.S. 137 (1995)...................................................................17, 19

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can.*,
  687. F.3d 1266, at 1269, 1278 (Fed. Cir. 2012) ........................ *passim*

*Bates v. United States*,
  522 U.S. 23 (1997)............................................................................17

*Benefit Funding Systems L.L.C. v. Advance America Cash Advance Centers, Inc.*,
  767 F.3d 1383 (Fed. Cir. 2014) ........................................................12

*In re Bilski*,
  545 F.3d 943 (Fed. Cir. 2008) ..........................................................37

*Bilski v. Kappos*,
  561 U.S. 593 (2010)..................................................................*passim*

*Brotherhood of R. R. Trainmen v. Baltimore & Ohio R.R.*,
  331 U.S. 519 (1947)...........................................................................15

iii

*Brown v. Gardner*,
513 U.S. 115 (1994)....................................................................23

*buySafe, Inc. v. Google, Inc.*,
765 F3d 1350 (Fed. Cir. 2014) ............................................34, 50, 52

*Cent. Bank of Denver v. First Interstate Bank*,
511 U.S. 164 (1994)....................................................................18

*Chevron U.S.A. v. Natural Res. Def. Council*,
467 U.S. 837 (1984).....................................................................22

*Comark Commc'ns, Inc. v. Harris Corp.*,
156 F.3d 1182 (Fed. Cir. 1998) ......................................................45

*Content Extraction and Transmission L.L.C. v. Wells Fargo Bank,
National Association*,
2014 WL7272219 (Fed Cir. Dec. 23, 2014).......................................33

*Cooper Techs. V. Dudas*,
536 F.3d 1330 (Fed. Cir. 2008) .......................................................22

*Corley v. United States*,
556 U.S. 303 (2009).....................................................................19

*In re Cuozzo Speed Technologies, L.L.C.*,
No. 2014-1301, 2015 WL 448667 at *3__F.3d__ (Fed. Cir. Feb 4,
2015) ...............................................................................11, 12, 44

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011) .................................................*passim*

*Dealertrack, Inc. v. Huber*,
674 F.3d 1315 (Fed. Cir. 2012) .................................................*passim*

*Diamond v. Diehr*,
450 U.S. 175 (1981).................................................................34, 36

*Digitech Image Technologies, L.L.C. v. Electronics for Imaging, Inc.*,
758 F.3d 1344 (Fed. Cir. 2014) ...........................................33, 40, 52

*Dole Food Co. v. Patrickson*,
538 U.S. 468 (2003)......................................................................18

*Edmonds v. Compagnie Generale Transatlantique,*
  443 U.S. 256, 266-67 (1979) ............................................................22

*FCC v. NextWave Personal Commc'ns, Inc.,*
  537 U.S. 293 (2003)........................................................................18

*FDIC v. Meyer,*
  510 U.S. 471 (1994)........................................................................14

*Fort Properties, Inc. v. American Master Lease LLC,*
  671 F.3d 1317 (Fed. Cir. 2012) ............................................32, 33, 40

*Franklin Nat'l Bank v. New York,*
  347 U.S. 373 (1954)........................................................................18

*Graham v. John Deere Co. of Kansas City,*
  383 U.S. 1 (1966)............................................................................20

*Hibbs v. Winn,*
  542 U.S. 88 (2004)..........................................................................19

*Holmes v. Sec. Investor Prot. Corp.,*
  503 U.S. 258 (1992).........................................................................21

*Keene Corp. v. United States,*
  508 U.S. 200 (1993).........................................................................17

*Lee v. Mike's Novelties, Inc.,*
  543 Fed. Appx 1010 (Fed. Cir. 2013)................................................51

*Mayo Collaboration Servs. v. Prometheus Labs, Inc.,*
  132 S. Ct. 1289 (2012).................................................................*passim*

*Meghrig v. KFC Western, Inc.,*
  516 U.S. 479 (1996).........................................................................18

*Merck & Co., Inc. v. Kessler,*
  80 F.3d 1543 (Fed. Cir. 1996) ........................................................23

*Merck v. Reynolds,*
  559 U.S. 633 (2010).........................................................................17

*Microsoft Corp. v. i4i Ltd. Partnership*,
131 S. Ct. 2238 (2011) ...................................................................22

*Midlantic Nat'l Bank v. N. J. Dep't of Envt'l Prot.*,
474 U.S. 494 (1986)......................................................................22

*MySpace, Inc. v. GraphOn Corp.*,
672 F.3d 1250 (Fed. Cir. 2012) .........................................................16

*Parker v. Flook*,
437 U.S. 584 (1978).................................................................35, 36

*Pennsylvania Pub. Welfare Dep't v. Davenport*,
495 U.S. 552 (1990)......................................................................21

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) .........................................................45

*Planet Bingo, LLC. v. VKGS LLC*,
576 Fed. Appx. 1005 (Fed. Cir. 2014)..................................................33

*Public Citizen v. Dep't of Justice*,
491 U.S. 440 (1989)......................................................................24

*Roberts v. Walters*,
792 F.2d 1109 (Fed. Cir. 1986) .........................................................12

*Shell Oil Co. v. Iowa Dep't of Revenue*,
488 U.S. 19 (1988)........................................................................25

*SiRF Tech. Inc. v. Int'l Trade Comm'n*,
601 F.3d 1319 (Fed. Cir. 2010) ...........................................39, 45, 46

*Sprietsma v. Mercury Marine*,
537 U.S. 51 (2002)........................................................................19

*Sullivan v. Stroop*,
496 U.S. 478 (1990)......................................................................20

*Ultramercial Inc. v. Hulu LLC*,
772 F.3d 709 (Fed. Cir. 2014), *reh'g denied* (Slip Op. February 20, 2015) ...........................................................................35, 42, 43

vi

*United States v. Am. Trucking Ass'ns,*
    310 U.S. 534 (1940)...................................................................25

*United States v. Boisdoré's Heirs,*
    49 U.S. 113 (1850)....................................................................23

*United States v. Granderson,*
    511 U.S. 39 (1994)....................................................................24

*United States v. Mead Corp.,*
    533 U.S. 218 (2001)..................................................................22

*Ex parte Verhaegh*, Appeal 2009-000128, 2009 WL 1719535 (B. Pat.
    App. & Intefer. June 11, 2009) ...............................................37

*Whitfield v. United States,*
    543 U.S. 209 (2005)..................................................................19

*Wilder v. Virginia Hosp. Ass'n,*
    496 U.S. 498 (1990)..................................................................25

*Wirtz v. Local 153, Glass Bottle Blowers Ass'n,*
    389 U.S. 463 (1968)..................................................................25

**Statutes**

28 U.S.C. §1295(a)(4)(A) ...................................................................1

35 U.S.C. §§ 100-212 ................................................................13, 16

35 U.S.C. §101 ...............................................................................*passim*

35 U.S.C. §102 ...............................................................................*passim*

35 U.S.C. §103 ...............................................................................*passim*

35 U.S.C. §112 ................................................................36, 51, 53

35 U.S.C. §§141(c) and 329................................................................1

35 U.S.C. § 282(2) ............................................................................16

35 U.S.C. §282 (b)(2)................................................................13, 15, 16

35 U.S.C. §311(b) ........................................................................17

35 U.S.C. §314(d) ........................................................................11

35 U.S.C. §§ 321-329 ...................................................................13

35 U.S.C. § 324(a) ........................................................................26

35 U.S.C. §324(e) .........................................................................26

*Leahy-Smith America Invents Act ("AIA"),* Pub. L. No. § 18(a) 112 29,
    125 Stat. 284 .......................................................................11, 12, 16

125 Stat. 284, 329-331 ..................................................................12

AIA § 6. .................................................................................13, 17

AIA § 18(a)(i)(c) ..........................................................................18

AIA § 18(d)(i) .....................................................................19, 27, 28

## Federal Rules

Federal Rule of Appellate Procedure 28.1(e) ...........................................57

Federal Rule of Appellate Procedure 32(a)(5)...........................................57

Federal Rule of Appellate Procedure 32(a)(6)...........................................57

Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Rule 32(b) ...................57

## Other Authorities

157 Cong. Rec. S5428 (daily ed. Sept. 8, 2011)................................27, 28

4 Donald S. Chisum, *Chisum on Patents* §11.07[5][a][B] (2005) ...........................14

Brief for the United Staes as amicus curiae in Support of Respondents.
    Alice Corp. Dty Ltd. v. CLS Bank Int'l, No. 13-298. 2014 WL
    828034, (U.S. Filed 26, 2014) .......................................................28

Federal Circuit Rule 47.5 ...............................................................1

Merriam Webster Dictionary ...................................................................................15

Matal, A Guide to the Legislative History of the America Invents Act:
    Part I of II, the Federal Circuit Bar Journal, Vol. 21, No. 4,
    http://www.uspto.gov/sites/default/files/aia_implementation/guide-
    to-aia-p1.pdf] ...................................................................................................26

Matal, A Guide to the Legislative History of the America Invents Act:
    Part II of II, the Federal Circuit Bar Journal, Vol. 21, No. 4
    http://www.uspto.gov/sites/default/files/aia_implementation/guide
    _to_aia_ part_2.pdf ..........................................................................................25

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, appellee identifies the following related judicial matters that would be affected by this Court's decision in the pending appeal:

1.    Benefit Funding Systems LLC, et al. v. Advance America, Cash Advance Centers, Inc., CNU Online Holdings, LLC F/K/A Cash America Net Holdings, LLC, Case No. 1:12-cv-801-LPS (D. Del. filed June 22, 2012);

2.    Benefit Funding Systems LLC, et al. v. Regions Financial Corporation, Case No. 1:12-cv-802-LPS (D. Del. filed June 22, 2012); and

3.    *Benefit Funding Systems LLC, et al. v. U.S. Bancorp*, Case No. 1:12- cv-803-LPS (D. Del. filed June 22, 2012).

## STATEMENT OF JURISDICTION

This Court does not have jurisdiction to review the decision of the Patent and Trademark Office's ("PTO") Patent Trial and Appeal Board ("PTAB") to institute the covered business method ("CBM") review at issue in this proceeding.  That decision is final and non-appealable pursuant to 35 U.S.C. §324(e).

This Court does have jurisdiction to review the remaining issues on appeal presented by the PTAB's final written decision pursuant to 28 U.S.C. §1295(a)(4)(A) and 35 U.S.C. §§141(c) and 329.

## STATEMENT OF THE ISSUES

1. Whether this Court has jurisdiction in this appeal to review the PTAB's decision to institute a covered business review based on Section 101?

2. If this Court has jurisdiction over the preceding issue, whether the PTAB had the authority to consider Section 101 in this case?

3. Whether the method and system claims at issue in this appeal are unpatentable under 35 U.S.C. §101, as covering the abstract idea of advancing funds based on the present value of a future income stream where the method claims can be performed by a human using pen and paper, the system claims make use of a generic computer without the use of specialized software, and the claim limitations are not meaningful, but are instead conventional and routine?

4. Whether the PTAB erred in adopting the broadest reasonable interpretation of the method claim term "deposited" by not limiting it to direct deposit?

## STATEMENT OF THE CASE

### I.     Overview of the '582 Patent

United States Patent No. 6,625,582 ("the'582 patent") is entitled "Method And System For Converting A Designated Portion of Future Social Security And Other Retirement Payments To Current Benefits" and was filed on May 12, 1999.  It was issued on September 23, 2003 and is directed to non-technological subject matter.  The specification states that "[t]he present invention relates generally to a system and method which provides a mechanism for a [beneficiary] of Social Security payments, or of other retirement payments, to access present value of a designated portion of its future retirement payments . . . . [W]ithout encumbering the beneficiary's rights to its future retirement benefits."  J. A. at 30, Col. 1:10-22[1].

The '582 patent explains that "retirement age individuals" are finding retirement benefits or the anticipated timing of those benefits "to be somewhat inadequate to meet their present and future financial needs, expectations, and objectives." J. A. at 30, Col. 1: 23-29.  The '582 patent further states that such retirement benefits "have not generally been seen as an adequate source of current capital, particularly to support financing based upon future receipts" due to "the current legislated proscriptions . . .

---

[1]  All references to the Joint Appendix are referred to as "J.A."  All references to RCMAC's blue brief are referred to as "RCMAC's Brief."

against assigning or otherwise alienating future retirement benefits." J. A. at 30, Col. 1:35-43. Therefore, the '582 patent purports to provide a financial program that allows a beneficiary to access the present value of future retirement payments while complying with U.S. laws restricting alienation of future retirement benefits. J. A. at 30, Col. 1:43-49. Curiously though, the '582 specification does not explain - and claims do not recite any limitations regarding - how the patented financial scheme complies with U.S. laws. Instead, each independent claim merely includes the limitation that monetary benefits are provided "without violating legislated proscriptions in the United States against alienation of future retirement funds." J. A. at 34, Col. 9:8-9 (claim 1).

Figures 2 and 3 of the '582 patent are flow charts depicting the operation of the two disclosed embodiments of the claimed financial program. Figure 2 "depict[s] the steps for enabling a beneficiary . . . to access present value of a designated portion of retirement benefits in the form of current capital." J. A. at 32, Col. 5:29-32. Figure 3 "depict[s] the steps for enabling a beneficiary . . . to access present value of a designated portion of its future retirement benefits in the form of an asset or service." J. A. at 32, Col. 6:50-53.

Notably, none of the steps require the use of a computer, and the specification makes clear that all of the steps can be performed by a human. Specifically, to perform

4

the patented financial scheme, a beneficiary of retirement benefits elects to participate in the program and selects a financial institution to act as a depository and disbursement agent for the beneficiary's retirement payments. J. A. at 32, Col. 5:4-39. A direct deposit account is then setup at the financial institution, and a funding source or asset or service provider is selected to provide current capital, assets, or services to the beneficiary. J. A. at 32, Col. 5:39-46. The beneficiary authorizes the financial institution to periodically disburse a designated portion of the beneficiary's retirement payments to the funding source or asset or service provider in exchange for the current capital provided by the funding source or the assets or services provided to the beneficiary. J. A. at 32, Col. 5:46-52. The value of current capital paid, or assets or services provided, to the beneficiary is based on the present value of a designated portion of the beneficiary's future retirement payments. J. A. at 32, Col. 5:53-56.

The '582 patent admits "techniques for determining present value of a future income stream are well known to those of ordinary skill in the art" (J. A. at 32, Col. 5:56-59) and present value is "determined upon actuarial and other information and utilizing known techniques for calculating present value of a future asset." J. A. at 31, Col. 3:43-46. If the beneficiary revokes participation in the program, or the participation is otherwise prematurely terminated, "the beneficiary may become

obligated to reimburse the funding source for any advance, and if so only from resources other than the future retirement benefits." J. A. at 32, Col. 5:66-6:11.

## II.    The Claims

U. S. Bancorp contends that the PTAB was correct in holding that claims 1, 13, 14, 18, 30 and 31 of the '582 patent are invalid because they claim abstract ideas that are unpatentable under 35 U.S.C. §101.  Two of the six claims at issue (1 and 18) are independent method claims.  The other four claims are system claims, two of which (13 and 30) are independent claims.

The full text of method claim 1 is reproduced below:

A computerized method for creating a source of  funds based on present value of future retirement payments, comprising the steps of:

designating an account in a depository for a  beneficiary to receive future retirement payments payable  to said beneficiary from a source of said retirement  payments for a preselected period of time;

designating a benefit provider for providing a  monetary benefit to said beneficiary;

authorizing said depository to periodically disburse a predetermined portion of said retirement payments deposited in said account to said benefit provider during said preselected period of time;

providing said monetary benefit to said beneficiary from said benefit provider based at least in part on present value of a designated portion of said future retirement payments without encumbering said beneficiary's right to said future retirement

> payments and without violating legislated proscriptions in the United States against alienation of future retirement benefits;
>
> causing said future retirement payments to be **deposited** (emphasis added) into said account throughout said preselected period of time;
>
> causing said depository to transfer a portion of said retirement payments deposited into said account to said benefit provider during said preselected period of time; and
>
> reimbursing said benefit provider from resources other than said future retirement payments if said transfer of a portion of said retirement payments from said depository to said benefit provider are curtailed prior to said end of said preselected period of time, and making said retirement payments available for the exclusive use of said beneficiary.

Method claim 18 recites that the source of funds is based on the present value of Social Security retirement benefits. J. A. at 35, Col. 11, claim 18. Importantly, none of the claim steps in these claims is limited to performance on, or by, any specific device or computer. Indeed, no device or computer is needed at all, as all of the steps can be performed by a human.

Claim 13 is a system claim that corresponds to method claim 1. The full text of claim 13 is produced below:

> A system for creating a source of funds based on present value of future retirement payments, comprising an account in a depository for a beneficiary to receive future retirement payments payable to said beneficiary from a source of said retirement payments for a preselected period of time, means for causing said future retirement payments to be deposited into said account during said preselected period of time,

means for causing said depository to disburse a predetermined portion of said retirement payments deposited in said account to a benefit provider during said preselected period of time in exchange for a present benefit provided to said beneficiary from said benefit provider based at least in part on present value of a designated portion of said future retirement payments, said exchange being without encumbering said beneficiary's right to said future retirement payments and without violating legislated proscriptions in the United States against alienation of future retirement benefits, means for reimbursing said provider from resources other than said future retirement payments if said transfers of a portion of said retirement payments from said depository to said benefit provider are curtailed prior to said end of said preselected period of time, and means for making said retirement payments available for the exclusive use of said beneficiary.

Claim 14 recites that the benefit provider is a source of capital. System claim 30 is essentially the same as system claim 13 except that the source of funds is based on future Social Security benefits. Dependent claim 31 recites that the benefit provider is a source of capital.

## III.    Procedural Background

On June 22, 2012, Appellant ("RCAMC") and its exclusive licensee sued U.S. Bancorp for infringement of the '582 patent (J.A. at 25) in the District Court for the District of Delaware in *Benefit Funding Systems LLC, et al. v. U.S. Bancorp*, Case No 1:12-cv-803-LPS (D. Del. filed June 22, 2012). J.A. at 659. On March 29, 2013, U.S. Bancorp filed a Petition requesting post-grant review of the '582 patent under the

8

transitional program for CBM patents. It sought CBM review on the grounds that claims 1, 13, 14, 18, 30, and 31 were directed to unpatentable subject matter under 35 U.S.C. § 101. J.A. at 37.

On September 23, 2013, the PTAB instituted review. J.A. at 147. On August 22, 2014, the PTAB issued its final written decision, holding that 35 U.S.C.§ 101 is a proper ground upon which a CBM review can be maintained and that the challenged claims (1, 13, 14, 18, 30, and 31) recite abstract concepts and thus were invalid under § 101. J.A. at 9-21. This appeal followed.

## STATEMENT OF THE STANDARD OF REVIEW

The standard of review of the Section 101 issues presented by this appeal is *de novo*.

## SUMMARY OF THE ARGUMENT

The relevant statutory provision provides that a decision to institute a CBM review is final and nonappealable. If there can be any review of that decision to institute by this Court--and there cannot--such review would be limited to a writ of mandamus. RCAMC never sought such a writ and has not sought it to this day. If its brief on appeal could be treated as seeking a writ of mandamus, it fails to justify entry of that writ because it has not shown clearly and indisputably that the PTAB exceeded its

authority. Finally, even if this Court were to conduct some kind of review of the PTAB's decision to conduct a CBM review, the relevant statutory language, rules of construction, case precedent and legislative history demonstrate that the PTAB had the authority to institute a CBM review in this case. If RCMAC's position is correct and the PTAB lacked the authority to consider Section 101, then an infringement defendant would also be unable to assert Section 101 grounds as a defense to a patent infringement suit, thereby making the PTO's extremely important decision that an alleged invention was patent eligible subject matter essentially unreviewable. In light of the plethora of Section 101 litigation and the Congressional and public concern relating to the validity of business method patents, such a result is absurd on its face.

The PTAB's decision that the claims at issue are unpatentable under Section 101 is unequivocally correct. Those claims, both method and system, are abstract ideas that can be performed by a human. There are no meaningful claim limitations that would convert the abstract idea into patentable subject matter. Instead, the non-technological method is implemented with conventional and routine steps that are not integral to the method. Indeed, the patent specification indicates that it is implemented with known computer capabilities (both hardware and software) and electronic communication links. Even if the method claims were construed to require "direct deposit", that construction would not make the abstract idea patentable. Neither do the system claims

contain any limitations that would make the abstract idea patentable. Finally, the PTAB's refusal to interpret the method claims to require "direct deposit" was correct because the PTAB used the broadest reasonable construction, direct deposit was only disclosed as a preferred embodiment, and it is improper to import limitations from the specification into the claims.

## ARGUMENT

## I.     THIS COURT DOES NOT HAVE JURISDICTION TO REVIEW THE PTAB'S DECISION TO INSTITUTE A CBM REVIEW

Section 18(a) of the Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284, 329 (hereinafter "the AIA"), provides that a CBM review "shall employ the standards and procedures of a post-grant review under Chapter 32 of title 35 United States Code…. *Id.* at Section 324(e) of chapter 32, 35 U.S.C. §324(e), entitled "No Appeal," provides that: "The determination by the Director whether to institute a post-grant review under this section shall be final and nonappealable." In *In re Cuozzo Speed Technologies, L.L.C.,* No. 2014-1301, 2015 WL 448667, *1 at *3__F.3d__ (Fed. Cir. Feb 4, 2015), this Court held that the identical language in 35 U.S.C. §314(d), pertaining to *inter partes* review, prohibited "review of the decision to institute IPR even after a final decision." That decision clearly also applies to CBM review and

11

prohibits review of the decision to institute the CBM review in this case.[2]  *See also*

*Roberts v. Walters*, 792 F.2d 1109, 1111 (Fed. Cir. 1986) (noting statutory bar to

judicial review of decisions by Veterans' Administration).

Although the Court in *Cuozzo* indicated in *dicta* that mandamus might be

available to challenge such a decision where the PTAB "clearly and indisputably

exceeded its authority" (*Id.* at *4), RCMAC has never sought a writ of mandamus and

has never sought to have this appeal treated as a request for mandamus.  In any event,

for the reasons stated in Part II, *infra*, the PTAB clearly had the right to institute this

CBM review.  RCMAC can not show that the PTAB has clearly and indisputably

exceeded its authority.  Accordingly, this Court has no jurisdiction to review the

decision to institute a CBM review in this case.

## II. THE STATUTORY LANGUAGE, CONTEXT, PURPOSE AND LEGISLATIVE HISTORY OF THE CBM REVIEW PROVISIONS, REINFORCED BY JUDICIAL PRECEDENT, COMPEL THE CONCLUSION THAT SECTION 101 IS AN AUTHORIZED GROUND OF CBM REVIEW

The CBM review provisions were set forth in Section 18 of the AIA, 125 Stat.

284, 329-331.   Section 18(a)(1) of that statute authorizes a post-grant review

---

[2]  In its September 25, 2014 decision upholding the lower court's stay of the litigation, this Court indicated in *dicta* that RCAMC "might potentially challenge [the authority to institute a CBM review] in the context of a direct appeal of the PTAB's final decision." *Benefit Funding Systems L.L.C. v. Advance America Cash Advance Centers, Inc.,* 767 F.3d 1383, 1386 (Fed. Cir. 2014).

proceeding "for review of the **validity** of covered business method patents (emphasis added)" using the post-grant review standards and procedures of Chapter 32 of Title 35. Those standards and procedures were set forth in Section 6 of the AIA, 125 Stat. 305 et seq. and are codified in 35 U.S.C. §§ 321-329.

The scope of that review is set forth in Section 321(b) which limits the review to "any ground which could be raised under paragraph (2) or (3) of Section 282(b) (relating to invalidity of the patent or any claim)." Section 282(b)(2) provides that a party may assert and plead a defense of "[i]nvalidity of the patent or any claim in suit on any ground specified in part II as a condition for patentability." Part II of Title 35 contains sections 35 U.S.C. §§ 100-212. Therefore, Section 101--an essential and threshold requirement of patentability--is contained in Part II.

Two other sections of Part II, §102 and §103, are entitled "Conditions for patentability; novelty" and "Conditions for patentability; non-obvious subject matter", respectively. RCAMC contends (RCAMC Brief at 10-12) that only Sections 102 and 103 are specified as conditions of patentability, and that Section 101 subject matter eligibility--even though it is clearly required for patentability and is a section in Part II of Title 35--is not a condition of patentability and, therefore, is not an authorized ground of unpatentability. Thus, the issue in this appeal is whether Section 101 subject

matter eligibility may be considered in a CBM review where the AIA requires the "validity" of the patent to be determined.

RCAMC's argument on appeal (RCAMC Brief at 12-18) appears deceptively simple, but it is actually misleading. In a nutshell, RCAMC contends that the plain meaning of the statute in issue is clear and unambiguous, that all judicial precedent to the contrary is dicta and that it is improper to resort to any rules of statutory construction or to the legislative history. *Id.* However, when the context and other relevant statutory provisions of the AIA are considered--as they must be--alongside almost 50 years of precedent, it is clear that the meaning of the AIA provisions governing CBM review includes review of subject matter eligibility under Section 101. *See generally* 4 Donald S. Chisum, *Chisum on Patents* §11.07[5][a][B] (2005). No other result conforms to the context of the CBM provisions, avoids rendering provisions superfluous and is consistent with decades of precedent, the purpose and legislative history of the CBM review provisions, and numerous fundamental rules of statutory construction.

### A. Fundamental Rules of Statutory Construction Mandate Inclusion of Section 101 Issues in CBM Review

Words that are not defined in a statute are given their ordinary or natural meaning, for example, the meaning in a dictionary. *FDIC v. Meyer*, 510 U.S. 471, 476 (1994). "Condition" is defined in the Merriam Webster online dictionary as

"something essential" to the occurrence of something else or a "requirement". http://www.merriam-webster.com/dictionary/condition.   Quite clearly, patent eligible subject matter is essential to patentability.   Indeed, it is a requirement.   Therefore the plain meaning of a "condition for patentability" in Section 282(b)(2) includes the requirement for patent eligible subject matter under Section 101.

RCAMC argues that only Sections 102 and 103 are "specified" as "conditions of patentability."   Thus it points to the fact that Sections 102 and 103 were titled as "conditions of patentability."   (The actual statutory title was "Conditions of patentability….") RCAMC's use of the word "specify" in such a narrow and restrictive sense to limit conditions to only those explicitly identified as conditions in a statutory title is improper.   Statutory titles or headings are "only a short-hand reference to the general subject matter involved" and are "not meant to take the place of the detailed provisions of the text" or limit its plain meaning.   *Brotherhood of R. R. Trainmen v. Baltimore & Ohio R.R.*, 331 U.S. 519, 528-29 (1947).

If Congress had intended that the reference to conditions for patentability in Section 282(b)(2) be limited to the conditions set forth only in Sections 102 and 103, it most certainly would have used the actual statutory title of those sections which

included the capitalized word "Conditions."[3]  However, it did not capitalize the word

conditions and therefore must have intended to use the word in a broader sense and not

in the narrow sense of §§102 and 103.

Moreover, if Congress intended to limit the review to only Sections 102 and 103,

it would not have incorporated 35 U.S.C. §282 (b)(2) which referred to all of the

conditions of patentability in Part II of Title 35--a part which includes Sections 100-

Section 212 and is titled "Patentability of Inventions & Grant of Patents."  The use of

the broader sense is certainly more consistent with the stated purpose of the CBM

review provisions which Section 18(a)(1) of the AIA said was for the purpose of

reviewing the "validity" of covered business method patents.  125 Stat. at 329.  A

review of the validity of a covered business method patent cannot properly exclude

Section 101.

Similarly, if Congress had intended to limit CBM review to Sections 102 and

103, it would have said so which is precisely what it did with *inter partes* review.  In

Section 6 of the AIA, 35 U.S.C. §311(b), Congress limited *inter partes* review to:

---

[3]  On pages 11 and 12 of its Brief, RCMAC cites *MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250 (Fed. Cir. 2012), as authority that consideration of Section 101 was not authorized in a CBM review.  That case did not decide this issue.  It dealt with the recommended order of consideration of certain issues by the court.  Indeed, it recognized that Section 101 was a defense available to an infringement defendant. *Id.* at 1261-1262.  Were Section 101 not available as a defense under 35 U.S.C. § 282(2), the Court would not have been able to suggest consideration of Section 101.

> A petitioner in an inter partes review may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents and printed publications.

When Congress uses certain language in one section of a statute, but omits it in another section, it is presumed that Congress acted intentionally in the inclusion or exclusion. *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). *See also Bailey v. United States,* 516 U.S. 137, 146 (1995) (superceded by statute on other grounds) (distinction in one provision between "used" and "intended to be used" creates implication that related provision's reliance on "use" alone refers to actual and not intended use); *Merck v. Reynolds*, 559 U.S. 633, 647 (2010) (Scalia, J., concurring) (use of "discovery" alone in one securities fraud statute of limitations provision and the use of discovery, "or after such discovery should have been made" in another securities fraud statute of limitations provision implies that "discovery" in the first provision means only "actual discovery" and does not include "constructive discovery"); *Bates v. United States*, 522 U.S. 23, 29 (1997) (inclusion of "intent to defraud" language in one provision and exclusion in a parallel provision).

A close corollary to this rule of construction is that Congress knows how to limit statutory language to Sections 102 and 103 when it wants to so limit. In fact, it did so

not only in Section 6, *supra*, but also in Section 18(a)(1)(C) of the AIA, 125 Stat. 330. Significantly, it did not do so in the CBM provisions which are clearly intended to be broader than the *inter partes* review provisions.

For example, "Congress knew how to impose aiding and abetting liability when it chose to do so," but it did not use the words "aid" and "abet" in the statute, and hence did not impose aiding and abetting liability. *Cent. Bank of Denver v. First Interstate Bank,* 511 U.S. 164, 176-77 (1994). *Franklin Nat'l Bank v. New York*, 347 U.S. 373, 378 (1954) (finding "no indication that Congress intended to make this phase of national banking subject to local restrictions, as it has done by express language in several other instances"); *Meghrig v. KFC Western, Inc.,* 516 U.S. 479, 485 (1996) ("Congress ... demonstrated in CERCLA that it knew how to provide for the recovery of cleanup costs, and ... the language used to define the remedies under RCRA does not provide that remedy."); *FCC v. NextWave Personal Commc'ns, Inc.*, 537 U.S. 293, 302 (2003) (when Congress has intended to create exceptions to bankruptcy law requirements, "it has done so clearly and expressly"); *Dole Food Co. v. Patrickson,* 538 U.S. 468, 476 (2003) (Congress knows how to refer to an "owner" "in other than the formal sense," and did not do so in the Foreign Sovereign Immunities Act's definition of foreign state "instrumentality"); *Whitfield v. United States,* 543 U.S. 209, 216 (2005) ("Congress has included an express overt-act requirement in at least 22 other current

conspiracy statutes, clearly demonstrating that it knows how to impose such a requirement when it wishes to do so.").

Another important rule of statutory construction is that "[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant...." *Hibbs v. Winn,* 542 U.S. 88, 101 (2004) (citation omitted) (*quoted in Corley v. United States,* 556 U.S. 303, 314 (2009); *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991); *Sprietsma v. Mercury Marine,* 537 U.S. 51, 63 (2002) (interpreting word "law" broadly could render word "regulation" superfluous in preemption clause applicable to a state "law or regulation"). *See also Bailey,* 516 U.S. at, 146 ("We assume that Congress used two terms because it intended each term to have a particular, nonsuperfluous meaning.")

If, as RCAMC contends, Section 101 is not properly part of a CBM review and cannot be considered by the PTAB, the fact that Congress devoted an entire section of the AIA to Section 101 would be inexplicable.  In Section 18(d)(1) of the AIA, 125 Stat. 331, Congress set forth:

> (e) RULE OF CONSTRUCTION.--Nothing in this section shall be construed as amending or interpreting categories of patent-eligible subject matter set forth under Section 101 of title 35, United States Code.

There would have been no need for this section, and it would be rendered superfluous if Section 101 and patent eligible subject matter were not within the scope of Section 18

and could not be considered in a CBM review. This canon of statutory construction alone is fatal to RCAMC's case.

Alternatively, if a word is not defined in the statute, but has an accepted meaning in the area of law, that meaning will govern unless Congress has evidenced its intent in clear and unmistakable terms. *See, e.g.*, *Sullivan v. Stroop*, 496 U.S. 478, 483 (1990) ("child support" in the AFDC statute is restricted to that term's specialized use in the Child Support program under the Social Security Act). Moreover, "where a phrase in a statute appears to have become a term of art ..., any attempt to break down the term into its constituent words is not apt to illuminate its meaning." *Id.*

In patent law, "conditions for patentability" is a term of art that has included Section 101. The PTAB stated this succinctly in its final written decision, referring to four cases[4], on pages 9 and 10 (J. A. at 9-10):

> As recognized by the Supreme Court, § 101 is a condition for patentability. In *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 12 (1966), the Supreme Court stated that the 1952 Patent Act "sets out the conditions of patentability in three sections," citing 35 U.S.C. §§ 101, 102, and 103. The Supreme Court has also addressed invalidity under § 101 when it was raised as a defense to an infringement claim under § 282. See *Mayo Collaboration Servs. v. Prometheus*

---

[4] *Mayo Collaboration Servs. v. Prometheus Labs, Inc.,* 132 S. Ct. 1289, 1293 (2012); *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 12 (1966); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1330 n.3 (Fed. Cir. 2012); *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 543 F.3d 657, 661 (Fed. Cir. 2008).

> *Labs, Inc.,* 132 S. Ct. 1289, 1293 (2012). The Federal Circuit has also recognized that § 101 is a condition for patentability that can be raised as an affirmative defense under 35 U.S.C. § 282(b)(2). For example, in *Dealertrack, Inc. v. Huber*, the majority rejected the dissent's contention that §101 is not a "condition for patentability," stating that "the 'defenses provided in the statute' § 282, include not only the conditions of patentability in §§ 102 and 103, but also those in § 101." 674 F.3d 1315, 1330 n.3 (Fed. Cir. 2012) (citing *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 543 F.3d 657, 661 (Fed. Cir. 2008)) ("It has long been understood that the Patent Act sets out the conditions for patentability in three sections: sections 101, 102, and 103").

*See also Bilski v. Kappos*, 561 U.S. 593, 621 (2010) (Stevens, J., concurring ("Section 101 imposes a threshold condition.")

When Congress used this term of art, it was presumed to know how it has been construed by the courts. *Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258 (1992); *Pennsylvania Pub. Welfare Dep't v. Davenport,* 495 U.S. 552, 563 (1990) (The Court "will not read the Bankruptcy Code to erode past…practice absent a clear indication that Congress intended such a departure." In that case the Court found that the statutory language plainly evidenced an intent to depart from past practice.); *Midlantic Nat'l Bank v. N. J. Dep't of Envt'l Prot.*, 474 U.S. 494, 501 (1986) (*citing Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 266-67 (1979) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific.") This rule of

construction is applicable to patent cases. *Microsoft Corp. v. i4i Ltd. Partnership,* 131 S. Ct. 2238 (2011) (In adopting language stating that a patent is presumed valid, Congress adopted the common law rule that the presumed validity of a patent may be overcome only by clear and convincing evidence.) Clearly Congress has considered Section 101 a requirement or condition of patentability.

Finally, this Court should give deference to the administrative interpretation of the AIA given by the PTO in its official regulations and in its written decision in this case. *Chevron U.S.A. v. Natural Res. Def. Council,* 467 U.S. 837 (1984). The *Chevron* rule was clarified in *United States v. Mead Corp.,* 533 U.S. 218 (2001), which limited it to formal agency process, such as adjudication and rule-making, both of which are present here. The PTO has clearly construed Section 18 as authorizing CBM review of Section 101 issues. Because it is a reasonable interpretation, this Court should give it deference. *Cooper Techs. V. Dudas*, 536 F.3d 1330, 1343 (Fed. Cir. 2008) (*Chevron* deference to PTO's interpretation of "original application" as used in the *inter partes* reexamination provisions of the American Inventors Protection Act of 1999); *Merck & Co., Inc. v. Kessler*, 80 F.3d 1543, 1550 (Fed. Cir. 1996) (deference afforded to PTO interpretation based not on *Chevron*, but on the "thoroughness of its consideration and the validity of its reasoning").

Despite all of these compelling reasons, RCAMC contends that the statutory language in issue is clear and unambiguous on its face, and resort to any rules of interpretation is unnecessary and improper. RCAMC Brief at 17-18. Its argument focuses only on three words of the statute and does not consider its purpose or other statutory provisions. This is plainly improper. "Ambiguity is a creature not of definitional possibilities but of statutory context." *Brown v. Gardner,* 513 U.S. 115, 118 (1994). This was stated in a different way over 150 years ago by Justice Taney when he said: "In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *United States v. Boisdoré's Heirs*, 49 U.S. 113, 122 (1850).

It is clear from the statute and its legislative history (*see* Part II(B), *infra*) that Congress was critical of business method patents and singled them out for a special review process to determine their validity. It is common knowledge and is confirmed by the legislative history of the AIA that business method patents were a matter of concern to Congress, the Supreme Court and this Court, as evidenced by *inter alia,* the *Bilski* decisions. One of the principal concerns was the issue of patent eligible subject matter. To contend that Congress did not authorize review under Section 101 ignores a major concern of Congress, the courts, patent practitioners and industry.

**B.    Section 101 Was an Integral Part of the AIA's Legislative History Which Demonstrates that Section 101 Was Intended to be Included in CBM Review**

On pages 17 and 18 of its Brief, RCAMC contends that it is improper to consider the legislative history of the AIA because the statute is unambiguous.  As pointed out in Part II(A), *supra*, the statute and pertinent rules of construction confirm that Section 101 can be included in a CBM review.  More importantly, even if RCAMC is correct and the AIA is unambiguous, it is still proper to consider legislative history when the plain meaning leads to an absurd result or a result that thwarts the purpose of the statute or the legislative intent.  *See, e.g.*, *United States v. Granderson*, 511 U.S. 39, 47 n.5 (1994) (dismissing an interpretation said to lead to an absurd result); *Public Citizen v. Dep't of Justice*, 491 U.S. 440, 454 (1989) ("Where the literal reading of a statutory term would 'compel an odd result,' ... we must search for other evidence of congressional intent to lend the term its proper scope.") (internal citation omitted).  "When aid to the construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.'"  *United States v. Am. Trucking Ass'ns,* 310 U.S. 534, 543-44 (1940).  "[P]roper construction frequently requires consideration of [a statute's] wording against the background of its legislative history and in the light of the general objectives Congress sought to achieve."  W*irtz v. Local*

24

*153, Glass Bottle Blowers Ass'n,* 389 U.S. 463, 468 (1968). *See also Shell Oil Co. v. Iowa Dep't of Revenue,* 488 U.S. 19, 26 (1988) (purposes of OCSLA, as evidenced in legislative history, confirm a textual reading of the statute and refute the oil company's reading); *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 515 (1990) (reference to Senate report for evidence of "the primary objective" of the Boren amendment to the Medicaid law).

The subject of post-grant review on all validity grounds was initially considered by Congress in hearings held between 2001 and 2006. A recurrent theme made by witnesses at the hearings was the need for a cost effective way to determine a patent's validity early on. *See* Matal, A Guide to the Legislative History of the America Invents Act: Part II of II, The Federal Circuit Bar Journal, Vol. 21, No. 4, at pages 600-605 (reprinted at http://www.uspto.gov/sites/default/files/aia_implementation/guide_to_aia_part_2.pdf); J.A. 475-480 (Part II of this article is also contained in the Joint Appendix at 414-528.)

Senator Kyl, a key sponsor of the legislation commented on the § 324(a) review standard during the Senate's March 2011 debates. He stated that chapter 32 uses the higher standard because:

> some of the issues that can be raised in post-grant review, such as enablement and section 101 invention issues, may require development through discovery. The Office wants to ensure that petitioners raising such issues present a complete

> case at the outset, and are not relying on obtaining information in discovery in the post-grant review in order to satisfy their ultimate burden of showing invalidity by a preponderance of the evidence.

Matal, *supra* at 608; J.A. at 483.

The Senate Republican Policy Committee's summary [*see* Matal, Part I at page 472n.248 for a description of the nature of this committee; Part I is reprinted at http://www.uspto.gov/sites/default/files/aia_implementation/guide-to-aia-p1.pdf] of the March 2011 Senate floor managers' amendment, which added section 18 to the AIA, provided the following description of this provision:

> [The managers' amendment also includes] [t]he Schumer-Kyl business-methods proceeding, as modified to accommodate industry concerns and PTO needs. In its 1998 [*State Street Bank & Trust Co. v. Signature Financial Group, Inc.*] decision, the Federal Circuit greatly broadened the patenting of business methods. Recent court decisions, culminating in last year's Supreme Court decision in *Bilski v. Kappos*, have sharply pulled back on the patenting of business methods, emphasizing that these "inventions" are too abstract to be patentable. In the intervening years, however, PTO was forced to issue a large number of business-method patents, many or possibly all of which are no longer valid. The Schumer proceeding offers a relatively cheap alternative to civil litigation for challenging these patents, and will reduce the burden on the courts of dealing with the backwash of invalid business-method patents.

Matal, at page 627; J.A. at 502. (Footnotes omitted)

The concept of abstract ideas, which is a fundamental judicially created part of Section 101, was made especially clear in Section 18(d)(1) of the AIA, 125 Stat. 331, which stated that the term "covered business method patent" does not include patents for technological inventions.  As stated in the Part II of the Matal article:

> During the March 2011 debates, Senator Kyl stated that:
>
> As the proviso at the end of the definition makes clear, business methods do not include "technological inventions." In other words, the definition applies only to abstract business concepts and their implementation, whether in computers or otherwise, but does not apply to inventions relating to computer operations for other uses or the application of the natural sciences or engineering.

Matal at 634; J.A. at 509  (Footnote omitted.)

Senators Kyl and Schumer were not alone in their view.  In one debate of the then-pending bill, Sen. Pryor stated: "As I understand it, Section 18 is intended to enable the PTO to weed out improperly issued patents for abstract methods of doing business."  157 Cong. Rec. S5428 (daily ed. Sept. 8, 2011).  In response, Sen. Leahy confirmed this view: "As in other post-grant proceedings, the claims should typically be evaluated to determine whether they, among other things, meet the enablement and written description requirements of the act, and contain patentable subject matter under the standards defined in the statutes, case law, and as explained in relevant USPTO guidance."  157 Cong. Rec. S5428 (daily ed. Sept. 8, 2011).  Thus, Senators Pryor and

Leahy knew that CBM review would address abstract business methods by reviewing compliance with § 101.

Furthermore, the U.S. Solicitor General has advanced the same understanding on behalf of the United States as amicus curiae in the Alice case. Brief for the United States as Amicus Curiae in Support of Respondents, Alice Corp. Pty. Ltd. v. CLS Bank Int'l, No. 13-298, 2014 WL 828034, (U.S. filed Feb. 26, 2014).  Specifically, the Solicitor General wrote that, "[i]n particular, the bill's sponsors anticipated that non-technological business-method patents would be subject to eligibility challenges under Bilski, and they emphasized that the CBM Program would provide a forum for those challenges."  Id. at 18-19.  The unambiguous position of both the PTO and the United States is that a CBM review can proceed based on a § 101 challenge.

Considering that:  1) the purpose of Section 18 was to authorize review of the "validity" of covered business method patents, 2) the legislators were aware of the *State Street Bank* and *Bilski* decisions as evidenced by the legislative history, 3) the definition of "covered business method patent" excluded technological inventions, and 4) the legislators were acutely aware of the abstract idea concept and limited covered business patents to abstract idea patents, RCAMC's argument that Section 101 subject matter eligibility issues (e.g. abstract ideas) cannot be considered in CBM review is nothing

short of absurd.  It is certainly inconsistent with the purpose of the statute, its statutory context, numerous rules of statutory construction and its legislative history.

In conclusion, this Court should hold that consideration of Section 101 is authorized in CBM review.

## III.   THE ASSERTED CLAIMS ARE INVALID UNDER 35 U.S.C. § 101

### A.   Legal Standards

"[L]aws of nature, physical phenomena, and abstract ideas" are not patent eligible subject matter under 35 U.S.C. §101. *Bilski v. Kappos*, 561 U.S. 593, 601 (2010).  *See also Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012).  In order to be patent-eligible, a claim must include an "inventive concept" beyond the abstract idea on which it is based.  *Mayo*, 132 S. Ct. at 1294.  This was recently confirmed by the Supreme Court in *Alice Corp. v. CLB Bank Int'l,* 134 S. Ct. 2347 (2014), wherein the Court held that a method for intermediating a settlement was an unpatentable abstract idea.

In reaching that holding, the Court stated:

> It follows from our prior cases, and *Bilski* in particular, that the claims at issue here are directed to an abstract idea. Petitioner's claims involve a method of exchanging financial obligations between two parties using a third-party intermediary to mitigate settlement risk. The intermediary creates and updates "shadow" records to reflect the value of each party's actual accounts held at "exchange institutions," thereby permitting only those transactions for which the parties have sufficient resources. At the end of each day, the intermediary issues irrevocable

29

instructions to the exchange institutions to carry out the permitted transactions.

*Id.* at 2386.

Adding well-known elements to an abstract idea does not render an otherwise ineligible claim patentable. *Mayo,* 132 S. Ct. at 1297-98. "[O]ne must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 1294. *See also Alice Corp.,* 134 S. Ct. at 2357. ("Because the claims at issue are directed to the abstract idea of intermediated settlement, we turn to the second step in *Mayo*'s framework. We conclude that the method claims, which merely require generic computer implementation, fail to transform that abstract idea into a patent eligible invention.")

Similarly, in *Bancorp Services., L.L.C. v. Sun Life Assurance Co. of Can.*, 687. F.3d 1266, at 1269, 1278 (Fed. Cir. 2012), the Federal Circuit ruled that claims directed to "systems and methods for administering and tracking the value of life insurance policies in separate accounts" did not claim patent eligible subject matter. The method and system claims in *Bancorp* included generating a life insurance policy having a value based on a value of underlying securities, and several "calculating" and "determining" steps for determining the value of various parameters "for the current day." *Id.* at 1270-71. The claims were found invalid because "without the computer limitations nothing remain[ed] in the claims but the abstract idea of managing a stable

value protected life insurance policy by performing calculations and manipulating the results." *Id.* at 1280. The use of a general purpose computer to perform a  method that merely embodies an abstract idea does not render the method patentable. *Id.* at 1278.

Several recent Supreme Court and Federal Circuit cases are helpful to the § 101 analysis of the asserted '582 patent claims. In *Bilski*, the claimed invention related to a method in which buyers and sellers of commodities in the energy market could hedge against the risk of price changes, and included the steps of "initiating" a series of transactions between a commodity provider and consumers at a first rate, "identifying" market participants with a counter-risk position to the consumers, and "initiating" a series of transactions between the market participants and the commodity provider at a second rate. 561 U.S. at 599. The Supreme Court found the claims to be ineligible because they covered the basic and abstract concept of hedging against risk, and would preempt the use of the abstract idea in all fields, even though the claims were limited to commodities trading. *Id.* at 611-612.

The Federal Circuit has further held that "merely claiming a software implementation of a purely mental process that could otherwise be performed without the use of a computer does not satisfy the machine prong of the . . . test." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011). In

that case, the abstract idea was directed to the use of the internet to identify credit card fraud by mapping locations where the credit card was used. The claim recited ineligible subject because the claim "can be performed in the human mind, or by a human using a pen and paper." *Id.* at 1372.

In *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1334 (Fed. Cir. 2012), the Federal Circuit found that claims directed to computer-aided methods and systems for processing credit applications over electronic networks were invalid under Section 101. Despite explicitly reciting a "computer aided method" of managing a credit application, the court found that the claims cover the basic concept of "processing information through a clearing house" and "using a clearinghouse specifically to apply for car loans," and are therefore unpatentable abstract ideas. *Id.* at 1333-34. Because the computer could be programmed in "very different ways," the computer recitation did not meaningfully limit the claims. *Id.* at 1333. Additionally, in *Fort Properties, Inc. v. American Master Lease LLC*, 671 F.3d 1317, 1322 (Fed. Cir. 2012), the Federal Circuit found that claims reciting a real estate investment tool designed to enable tax-free exchanges of property were directed to an unpatentable abstract concept. Claims requiring a computer to "generate a plurality of deedshares" were ineligible because the computer limitation did not "play a significant part in permitting the claimed method to be performed." *Id.* at 1323 (citations omitted).

This Court's post-*Alice* cases are equally instructive. In *Content Extraction and Transmission L.L.C. v. Wells Fargo Bank, National Association*, 2014 WL7272219 (Fed Cir. Dec. 23, 2014), this Court held that a method (which could be performed by the software in an ATM machine) of extracting data from hard copy documents using a scanner, recognizing specific information in the document (such as the amount of a check) and storing that information in a memory was an unpatentable abstract idea.

In *Digitech Image Technologies, L.L.C. v. Electronics for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014), this Court held that a method for creating a device profile within a digital imaging system and the profile itself were an unpatentable abstract idea. The device profile was a collection of data (i.e. information) and the method encompassed the abstract idea of organizing data through mathematical correlations.

In *Planet Bingo, LLC. v. VKGS LLC*, 576 Fed. Appx. 1005 (Fed. Cir. 2014), this Court held that a computer-aided method and system for managing the game of bingo was an unpatentable abstract idea. The computer was used for its basic functions of "storing numbers, assigning identifiers, allowing for basic inputs and outputs, printing of a receipt, displaying of numbers, and/or matching…for verification. The Court held that the dependent claims had only slight variations from the independent claims and the system claims recited the same basic process as the method claims. According, all

of the claims were held to be unpatentable because they could be carried out by a human using pen and paper.

In *buySafe, Inc. v. Google, Inc.,* 765 F3d 1350 (Fed. Cir. 2014), the claims were directed to methods and media for guaranteeing a party's performance of an online transaction. This Court held that the unpatentable claims involved the abstract idea of a third party guarantee of a transaction. The fact that the idea was applied using a computer and the internet was deemed insignificant:

> The claims' invocation of computers adds no inventive concept. The computer functionality is generic—indeed, quite limited: a computer receives a request for a guarantee and transmits an offer of guarantee in return. There is no further detail. That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive. The computers in *Alice* were receiving and sending information over networks connecting the intermediary to the other institutions involved, and the Court found the claimed role of the computers insufficient…. And it likewise cannot be enough that the transactions being guaranteed are themselves online transactions. At best, that narrowing is an "attempt[] to limit the use" of the abstract guarantee idea "to a particular technological environment," which has long been held insufficient to save a claim in this context. *See Alice*, 134 S. Ct. at 2358; *Mayo*, 132 S. Ct. at 1294; *Bilski*, 561 U.S. at 610–11; *Diehr*, 450 U.S. at 191.

*Id.* at 1355 (internal citation omitted).

Finally, in *Ultramercial Inc. v. Hulu LLC,* 772 F.3d 709 (Fed. Cir. 2014), *reh'g denied*, (Slip Op. February 20, 2015), the abstract idea involved the use of the

viewing of an advertisement as currency to exchange for access to copyrighted material. The method claims recited 11 steps which were described as routine, conventional activity using a general purpose computer and the Internet. None of these steps were sufficient to transform the abstract idea into patentable subject matter. *Id.* at 715.

### 1. Preemption is Not Required for an Abstract Idea to be Unpatentable

In Part III(C)(1) and (2) of its Brief (RCMAC Brief at 18-32), RCMAC argues that preemption is required in order for an abstract idea to be patent ineligible. This is incorrect. The Supreme Court has ruled in several cases that preemption is not required. In *Parker v. Flook*, 437 U.S. 584, (1978), the Court noted that the claims did not "cover every conceivable application of the formula" (*id.* at 586), that the patent applicant did not seek to "wholly pre-empt" the mathematical formula, and that there were uses of his formula outside the two industries involved and in the public domain (*id*. at 589-590). Nevertheless, the Court held that the claims were an unpatentable abstract idea. *Id.* at 590. *See also Bilski,* 561 U.S. at 609 (2010) (Limiting an abstract idea to one field of use does not make it patentable subject matter.); *Diamond v. Diehr*, 450 U.S. 175, 190-192 (1981).

### 2.    Compliance with Section 112 is Not Relevant to the Section 101 Analysis

In several places in their Brief (RCMAC Brief at 8, 20-23) RCMAC makes the argument that  if the claims are drawn to a machine or comply with Section 112 of the Patent Code, 35 U.S.C. §112, they are not ineligible abstract ideas and therefore comply with Section 101.   The Supreme Court has rejected this argument on several occasions.  Subject matter eligibility under Section 101 is a separate inquiry and must precede consideration of Sections 102, 103 and 112.

*Alice Corp.,* 134 S. Ct. at 2358-2360; *Flook,* 437 U.S. at 593 (Obligation to determine subject matter eligibility under Section 101 precedes and is independent of the determination of compliance with Sections 102, 103 and 112); *Mayo,* 132 S. Ct. at 1303-1304  (Section 101 determination does not depend on later sections; a machine is not *per se* patentable subject matter under Section 101).  As pointed out in  the cases cited in Part III(D), *infra,* courts frequently determine that system/machine/means-plus-function claims are not subject matter eligible under Section 101.     Whether the claims recite a process or a machine, the analysis is the same.[5]

------

[5]   On pages 20-22 of its Brief, RCMAC cites four cases to support its argument that a machine is patent eligible. *Application of Noll*, 545 F.2d 141 (C.C.P.A. 1976); *Ex parte Verhaegh*, Appeal 2009-000128, 2009 WL 1719535 (B. Pat. App. & Interfer. June 11, 2009); *In re Alappat*, 33 F.3d 1526 (Fed. Cir. 1992); and *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008).  These cases predate the Supreme Court's rulings in

### B.     Method Claims 1 and 18 Are Invalid Under § 101

Claim 1 is unpatentable because it claims advancing funds based on future retirement payments without any "inventive concept" beyond this abstract idea[6].  *See Mayo*, 132 S. Ct. at 1294.  The concept of calculating a present value of future payments is not new, nor is the concept of obtaining a loan based on the present value of future payments.  The first three limitations of claim 1 generally describe designating an account in which future retirement payments are deposited, designating a benefit provider, and authorizing disbursement of the future payments to the benefit provider.  The next three limitations merely recite providing money to the beneficiary from the benefit provider based on the present value of a portion of the future payments, depositing the future payments into the account, and disbursing a portion of the payments to the benefit provider.  The last limitation of claim 1 recites reimbursing the benefit provider from another source if the future retirement payments are curtailed.  Thus, none of the steps of claim 1 recite anything other than the abstract concept of providing funds based on the present value of future payments.

---

*Bilski, Mayo* and *Alice,* are inconsistent with those and several other Supreme Court rulings, and are therefore of questionable value as precedent.

[6]   On page 8 of its brief (RCMAC Brief at 8), RCMAC contends that there is "no evidence …[that] an abstract concept is even implicated by the '582 patent."  *See also Id.* at 24.  Aside from the fact the abstract concept is plain on its face, RCMAC counsel at the hearing before the PTAB stated that the Patent Owner was "happy to accept what [U.S. Bancorp] claim[s] is the abstract concept."  J.A. 13, 337.

Indeed, the method is not legally distinguishable or conceptually different from the unpatentable methods in *Bilski* and *Alice* and the other business method cases cited in Part III(A), *supra*.

Requiring that the future payments be retirement payments does not import patentability to the claims, as the claims are still nothing more than the application of the known economic principle of discounting future cash flows to present values. *See, e.g.*, *Bilski*, 561 U.S. at 611-612 (finding claim invalid as directed to an abstract idea even though concept of hedging against risk was specific to commodity trading); *Dealertrack*, 674 F.3d at 1333-34 (invalidating claim directed to abstract idea of processing loan information through a clearinghouse, even when limited to applying for car loans). "[T]o transform an unpatentable law of nature into a patent-eligible *application* of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Mayo*, 132 S. Ct. at 1294. Claim 1 is therefore invalid under 35 U.S.C. §101 because it fails to claim any "inventive concept" beyond the abstract concept of providing funds based on the present value of future retirement payments. Claim 1 can be performed with pen and paper and does not need computer implementation.

The nominal recitation of a "computerized method" in the preamble of claim 1 also fails to render claim 1 patent-eligible. In order to fall within § 101, the

computer must be "integral" to the claimed method, and "facilitat[e] the process in a way that a person making calculations or computations could not." *Bancorp*, 687 F.3d at 1278; *see also SiRF Tech. Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010) ("In order for the addition of a machine to impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly, i.e., through the utilization of a computer for performing calculations.").

Here, a computer is clearly not an "integral" component of the method, as a computer is not recited at all in the body of claim 1. The '582 specification also confirms that existing computer capabilities and electronic communication links - not any specialized hardware or software - can be used "to effect electronic funds transfers to and from the beneficiary's individual deposit account." J.A. 32, Col. 5:1-5. The use of a computer in claim 1, if required at all, is solely to expedite the transfer of funds and calculate the present value of future payments, which can be done manually. *See CyberSource*, 654 F.3d at 1372 (finding claim patent-ineligible where the claim "can be performed in the human mind, or by a human using a pen and paper."). Claim 1 is thus invalid under § 101 because the computer recited in the preamble does not "play a significant part in permitting the claimed method to be performed." *Fort Props.*, 671

F.3d at 1323 (citations omitted). Indeed, the preamble recitation of a "computerized method" is not even a claim limitation. *See Digitech Image* 758 F.3d at 1351 (No claim limitation tied the method to an image processor. The recitation of a "digital image reproduction system" in the preamble was not a limitation it because it "merely states the purpose or intended use of an invention.") (citation omitted).

As further confirmation that claim 1 is invalid under § 101, claim 1 fails to meet either prong of the machine or transformation test, which although no longer the dispositive test for determining patent eligibility, remains an "important clue [or] an investigative tool." *Bilski*, 561 U.S. at 604.

*First*, the claimed method is not tied to a particular machine or apparatus. As discussed above, the only computer recitation occurs in the preamble of claim 1, and even that recitation is not tied to any particular function that would indicate the computer must be a specially-programmed computer. The only disclosure of a computer in the '582 specification is of "known" or "existing" computer "capabilities," suggesting that any general purpose computer will suffice. *See* J.A. 30, Col. 2:30-35, 5:1-5. Claim 1 is thus the computer implementation of an otherwise purely mental process that could be performed without the use of a computer, and therefore fails to meet the "machine" prong of the machine or transformation test. *See CyberSource*, 654 F.3d at 1375.

*Second*, claim 1 fails the "transformation prong" of the test because it only claims a process for manipulating data to determine a present value loan amount based on future retirement payments. *Id.* (The mere manipulation or reorganization of data . . . does not satisfy the transformation prong."). In *CyberSource*, the claim included steps for obtaining credit card information and processing a number of parameters to construct a map of credit card numbers that can be used to determine if a credit card transaction is valid. *Id.* at 1373-74. The Federal Circuit found the claim to be patent-ineligible because it claimed a process that "manipulates data to organize it in a logical way such that additional fraud tests may be performed." *Id.* at 1375. *See also Bancorp*, 687 F.3d at 1273 (affirming district court's ruling that claim fails the transformation prong where it does "not transform the raw data into anything other than more data and are not representations of any physically existing objects" (citation omitted)).

Claim 18 is similar to claim 1, except that instead of providing benefits based on future retirement payments, claim 18 specifies that the future payments are Social Security payments. This minor and insignificant difference from claim 1 does not alter the eligibility analysis set forth above for claim 1. Accordingly, claim 18 is invalid as directed to unpatentable subject matter for the same reasons discussed above in conjunction with claim 1.

RCAMC argued before the PTAB (J.A. at 186-188) that because the '582 patent claims were amended during prosecution to overcome an anticipatory reference to include an alleged significant limitation of "providing a benefit 'without encumbering said beneficiary's right to said future retirement payments and without violating legislated proscriptions in the United States against alienation of future retirement benefits,'" the claims cover less than the abstract "concept of advancing funds based on future retirement payments." *See also* RCMAC Brief at 35. However, that claim limitation is the type of insignificant limitation that does not meaningfully limit a claim for Section 101 purposes. *Ultramercial, Inc.* 772 F.3d at 714 (a claim is not limited meaningfully if it contains only insignificant or token pre- or extra-solution activity—such as identifying a relevant audience, a category of use, field of use, or technological environment).

In the Background section of the '582 patent, the inventors acknowledge that, at the time the '582 patent was filed, there existed "legislated proscriptions in the United States against assigning or otherwise alienating future retirement benefits." J.A. at 30, 1:35-37. By not encumbering future retirement payments, the '582 patent claims providing a benefit based on the present value of future payments "while complying with the United States laws and regulations governing the assignment of future Social Security or other retirement benefits." *Id.* at Col. 1:43-49. Of course, the '582 patent

does not identify any specific laws and regulations, let alone how to setup a system --

hardware and software that complies with those laws and regulations.

Accordingly, claiming that an invention does not violate U.S. law is not a meaningful claim limitation, because at most, only theoretical illegal methods of advancing future retirement benefits are excluded from the abstract concept. Indeed, the Federal Circuit stated in *Ultramercial,* 772 F.3d at 721:

> A rule holding that claims are impermissibly abstract if they are directed to an entrepreneurial objective, such as methods for increasing revenue, minimizing economic risk, or structuring commercial transactions, rather than a technological one, would comport with the guidance provided in both *Alice* and *Bilski*.

> For the foregoing reasons, method claims 1 and 18 are impermissibly abstract. They can be performed by a human using pen and paper. Even if the recitation of a "computerized method" were a claim limitation--and it is not--the use of known computer and software capabilities to make the method more efficient and faster does not convert an abstract idea into patent eligible subject matter.

## C.    The Use of a Computer and the Electronic Transfer of Funds Are Not An Integral Component Of And Do Not Meaningfully Limit The Claims

RCAMC's argument that "[a] computer is necessary to cause the direct deposit of future retirement and Social Security payments" (RCAMC Brief at 19-23) does not render the '582 patent claims patentable. RCAMC is attempting to improperly limit the method claims to the preferred embodiment of direct deposit by electronic funds transfer disclosed in the specification, and regardless, that embodiment relies on known

computer technology. Before the PTAB, '582 patent claims are to be given their broadest reasonable interpretation. *See In re Cuozzo* 2015 WL448667 at *5 (Fed. Cir. 2015). When given this interpretation, it is clear that the claimed invention is directed to a process that can be performed on pen and paper, as consumers were able to deposit Social Security or retirement payments long before computers. *See CyberSource*, 654 F.3d at 1372 (holding method for verifying credit card transaction patent-ineligible because the "method steps can be performed in the human mind, or by a human using a pen and paper.")

RCAMC's argument (RCAMC Brief at 36) that "deposited" must be interpreted to mean "deposit via direct deposit" violates the basic tenet of claim construction that "limitations from the specification are not to be read into the claims" and should be disregarded. *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998). The Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005). If RCAMC wished to limit its claims to direct deposits, it could have done so, rather than claiming deposits generally. Indeed, direct deposit was described in the '582 patent as a preferred embodiment. Accordingly, the PTAB's holding (J.A. at 6) that

deposited is not limited to "deposited via direct deposit" is both required (*Cuozzo, supra*) and correct.

Even if the claims were limited to direct deposits by electronic funds transfer, such a nominal inclusion of a computer would not render the claims patent eligible. For a computer to impose a meaningful limit on the scope of a claim, and therefore impart patent eligibility, "it must play a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly." *SiRF Tech., Inc.*, 601 F.3d at 1333. Using direct deposit to facilitate depositing of future retirement payments is an obvious mechanism for permitting manual depositing to be achieved more quickly. *See Bancorp Servs.,* 687 F.3d at 1279 (Fed. Cir. 2012) (finding claims patent-ineligible where recited computer "simply performs more efficiently what could otherwise be accomplished manually.").

The computer must be both "integral" to the method and sufficiently specialized for the method to perform more than "basic" computing functions. *Id.* at 1278. *See also SiRF Tech., Inc.*, 601 F.3d at 1333 ("[F]or the addition of a machine to impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly . . . .").

45

In addition, using a computer to enable direct deposit does not play a significant part in permitting the claimed method to be performed. The beneficiary could manually deposit retirement payments, instead of using direct deposit. Indeed, the specification confirms that the use of a computer is optional and for the sake of efficiency, as the "existing computer capabilities" are used only "[d]esirably, and where appropriate" to perform the claimed invention. J.A. at 32, Col. 5:1-5. The specification also refers to "existing" computer components and "well-known" deposit techniques. *Id.* at Col. 5:1-22. Merely performing the claimed method using known software on existing hardware does not render a claim patent-eligible. *See Dealertrack, Inc.*, 674 F.3d at 1334 (finding claims covering a software implementation of "a clearinghouse process using any existing or future-devised machinery" patent-ineligible).

RCAMC further argues that system claims 13, 14, 30, and 31 require a computer because they recite several means-plus-function limitations, whose only corresponding structure disclosed in the specification is a computer. RCAMC Brief at 19-23. Yet even if the means-plus-function limitations in those claims are construed to require a computer, the use of a computer does not place any meaningful limitation on the scope of the claims. As stated above, the '582 patent specification states that any "existing computer capabilities," both hardware and software, can be used to perform the

claimed invention (J.A. 32, Col. 5:1-5), and the system claims are then directed to a system for performing the claimed method of providing benefits based on the present value of future benefits. *See CyberSource*, 654 F.3d at 1375 ("the incidental use of a computer to perform the mental process of [the method claims] does not impose a sufficiently meaningful limit on the claim's scope."); *Bancorp*, 687 F.3d at 1278 ("the fact that the required calculations could be performed more efficiently via a computer does not materially alter the patent eligibility of the claimed subject matter."); *id.* at 1279 ("the management of the life insurance policy . . . is 'integral to each of [the] claims at issue,' not the computer machinery that may be used to accomplish it.") (citation omitted).

### D.    System Claims 13, 14, 30, and 31 Are Invalid Under § 101

Each of the statutory classes set forth in Section 101 (*i.e.*, process, machine, manufacture, and composition of matter) is subject to the same threshold scrutiny under Section 101. *See Mayo*, 132 S. Ct. at 1293-94.  Both the Supreme Court and the Federal Circuit have held that corresponding system and method claims should be treated the same for Section 101 purposes. *See Mayo* 132 S. Ct. at 1294,  (cautioning against a patent eligibility analysis that "depend[s] simply on the draftsman's art" (internal quotation marks omitted)); *Bancorp*, 687 F.3d at 1277 (affirming treatment of "the asserted system and medium claims are no different from the asserted method

claims for patent eligibility purposes."). Therefore, the same patent eligibility analysis applied to method claims 1 and 18, also applies to system claims 13, 14, 30, and 31 of the '582 patent. The system claims are therefore invalid under § 101 for the same reasons discussed above with respect to method claims 1 and 18. *Alice Corp.,* is particularly instructive on this point:

> Petitioner's claims to a computer system and a computer-readable medium fail for substantially the same reasons. Petitioner conceded below that its media claims rise or fall with its method claims….As to its system claims, petitioner emphasizes that those claims recite "specific hardware" configured to perform "specific computerized functions."… But what petitioner characterizes as specific hardware a "data processing system" with a "communications controller" and "data storage unit," …is purely functional and generic. Nearly every computer will include a "communications controller" and "data storage unit" capable of performing the basic calculation, storage, and transmission functions required by the method claims…. As a result, none of the hardware recited by the system claims "offers a meaningful limitation beyond generally linking 'the use of the [method] to a particular technological environment,' that is, implementation via computers."…Put another way, the system claims are no different from the method claims in substance. The method claims recite the abstract idea implemented on a generic computer; the system claims recite a handful of generic computer components configured to implement the same idea. This Court has long "warn[ed] . . . against" interpreting §101"in ways that make patent eligibility 'depend simply on the draftsman's art.'"… ("The concept of patentable subject matter under §101 is not 'like a nose of wax which may be turned and twisted in any direction . . . '"). Holding that the system claims are patent eligible would have exactly that result.

> Because petitioner's system and media claims add nothing
> of substance to the underlying abstract idea, we hold that they too
> are patent ineligible under §101.

134 S. Ct. at 2360 (citations omitted).

Claim 30 is the counterpart system claim to the method recited in claim 18. Because the same patent-eligibility analysis applies to both system and method claims, claim 30 is invalid for the same reasons as claims 1 and 18. *See id*. *Mayo*, 132 S. Ct. at 1293-94; *CyberSource*, 654 F.3d at 1374 ("Regardless of what statutory category ("process, machine, manufacture, or composition of matter," 35 U.S.C. § 101) a claim's language is crafted to literally invoke, we look to the underlying invention for patent-eligibility purposes."). Claim 30 is also similar to claim 13, but with the additional limitation that the future retirement payments are Social Security payments. This additional limitation does not alter the patent eligibility analysis. Claim 30 is therefore invalid for the same reasons as claim 13. Dependent claim 31, like claim 14 discussed above, recites that the benefit provider is a source of capital. The additional limitation of claim 31 does not change the Section 101 analysis, and claim 31 is again invalid for the same reasons discussed above with respect to claim 30.

It is quite common in Section 101 cases dealing with abstract ideas that the Courts do not distinguish between method, system and media claims in holding them to be ineligible subject matter. *See e.g. Alice, supra*; *Bancorp Services, supra* (method

and media claims); *Dealertrack, supra* (method and system claims); *BuySafe, supra* (method and media claims); *Cybersource, supra* (method and media claims); *Planet Bingo, supra* (method and system claims).[7]

For the reasons set forth above, U.S. Bancorp submits that claims 1, 13, 14, 18, 30 and 31 of the '582 patent are invalid under 35 U.S.C. § 101.

### E. RCAMC'S Remaining Arguments Are Unsound and Legally Irrelevant

RCAMC submits several legally erroneous and/or irrelevant arguments. RCMAC argues that: (1) U.S. Bancorp has failed to show that the claims are unpatentable because it did not submit evidence (RCMAC Brief at Parts III(B) and C(3); (2) the '582 patent complies with 35 U.S.C. § 112 (RCMAC Brief at 19, 36); and (3) U.S. Bancorp's non-infringement arguments are inconsistent with its Section 101 challenge (RCMAC Brief at 28-32).

### 1. Expert Testimony Is Unnecessary

RCAMC argues that U.S. Bancorp failed to meet its burden of establishing patent-ineligibility because it did not submit evidence on the issue. However, "[e]xpert

---

[7] On page 23 of its Brief and in Part III(A) generally, RCMAC argues that "non-indefinite means-plus-function machine claims 13, 14, 30 and 31 are not subject to the abstract idea concept exception of patent eligibility. Because they are deemed to apply to a particular machine, they cannot be considered an abstract idea." *See also Id.* at 20, 22. As shown above, this contention that a machine is *per se* patent eligible subject matter is simply wrong and flies in the face of all precedent.

testimony is not necessary in patent cases involving technology that is 'easily understandable,'" such as the technology at issue here. *Lee v. Mike's Novelties, Inc.*, 543 Fed. Appx 1010, 1015 (Fed. Cir. 2013). Indeed, in granting U.S. Bancorp's CBM Petition, the PTAB correctly noted that "RCAMC's claims do not solve a technical problem using a technical solution," and they "lack a novel and unobvious technological feature." J.A. at 154. In view of the non-technical nature of the claims, there is no need for explanatory expert testimony. Moreover, as discussed above, no expert testimony is needed to determine that the limitations relied on by RCAMC fail to meaningfully limit the scope of the claims. Nor is expert testimony required to determine whether claims recite a computer limitation that provides a meaningful limitation. The PTAB is competent to make such determinations based on the claim language and the '582 patent specification.

Finally, issues dealing with subject matter eligibility are frequently decided as a result of a motion for judgment on the pleadings or a motion to dismiss for failure to state a claim. The issue frequently--as here--does not require evidence beyond the patent itself and the pleadings. *See e.g. Ultramercial, supra* (motion for failure to state a claim); *Content Extraction, supra* (motion for failure to state a claim); *buySafe, supra* (motion for judgment on the pleadings); *Digitech Image, supra* (motion for failure to state a claim).

The PTAB was correct rejecting RCMAC's lack of evidence arguments and holding that the Section 101 patentability issues could be determined by resort to the patent itself due to the nature of the technology.  J.A. at 18-19.

> ### 2.  RCMAC's Failure To Explain How The Claimed Method Does Not Violate U.S. Law Indicates A Lack Of Meaningful Limitation

In response to U.S. Bancorp's argument before the PTAB that the '582 patent specification and claims do not explain how the claimed financial scheme complies with laws restricting alienation of future retirement benefits, the PTAB rejected RCAMC's contention that claim limitations in the method and system claims relating to the alienation of future retirement benefits converted the abstract idea into patentable subject matter and are meaningful limitations.  J.A. at  13-14.  On appeal, RCMAC makes the irrelevant argument that the because the '582 patent complies with 35 U.S.C. § 112 ¶6, the system claims are patent eligible subject matter . *See* RCAMC Brief at 19, 36.  RCAMC's argument is misplaced.

U.S. Bancorp did not raise any Section 112 invalidity arguments in this CBM review, and in fact specifically reserved such arguments in its Petition for Review. J. A. at 98 n. 2. Rather U.S. Bancorp noted that the '582 patent's failure to describe how the claimed method complies with U.S. law to demonstrate that the limitation did not meaningfully limit the scope of the claims.  Instead of claiming and disclosing a

particular manner (software and hardware) in which the method and system may comply with U.S. law, the claims broadly cover any method of advancing future retirement benefits that does not violate U.S. law. This generalized claiming is highly relevant to the Section 101 analysis.

### 3.     U.S. Bancorp's Non-Infringement Contentions Have No Bearing On The Section 101 Analysis

RCAMC also makes the factually and legally incorrect argument that U.S. Bancorp's Section 101 argument is precluded by U.S. Bancorp's noninfringement position. RCMAC Brief at 28-32. First, the Federal Circuit has rejected this argument, finding that a defendant's "alternative assertion of noninfringement does not detract from its affirmative defense of invalidity under § 101." *Bancorp*, 687 F.3d at 1280. Thus, non-infringement arguments are irrelevant to the Section 101 issue before the PTAB.

Second, RCAMC incorrectly argues that U.S. Bancorp allegedly admitted that there were practical non-infringing alternatives to the abstract concept and that such alleged admission showed that there was no risk of preemption here. U.S. Bancorp has never stated that the accused product is limited to practicing the abstract idea. RCAMC points to U.S. Bancorp's statement that the accused system allows customers to receive advanced funds that are repaid from the customer's next Direct Deposit at 29. However, this general description of the accused service is in no way an admission that

the abstract idea of advancing future retirement benefits is patentable. *See also* PTAB's Final Written Decision, J.A. at 20.

## IV.    CONCLUSION

For the foregoing reasons, U.S. Bancorp requests this Court to affirm the PTAB's holding of patent invalidity under Section 101.


Respectfully submitted,

/s/ Anthony H. Son


Date: March 23, 2015                    Anthony H. Son
                                        anthonyson@andrewskurth.com
                                        Frederick S. Frei
                                        frederickfrei@andrewskurth.com
                                        Andrews Kurth LLP
                                        1350 I Street NW
                                        Washington, D.C. 20005
                                        (202) 662-2700 (Telephone)
                                        (202) 662-2739 (Fax)

                                        Counsel for Appellee U.S. Bancorp

## CERTIFICATE OF SERVICE

I hereby certify that on this day, March 23, 2015, the foregoing Appellee's Brief was electronically filed and therefore served electronically via the Court's ECF/CM system on all counsel of record.


*/s/ Anthony H. Son*


Anthony H. Son
anthonyson@andrewskurth.com
Andrews Kurth LLP
1350 I Street NW
Washington, D.C. 20005
(202) 662-2700 (Telephone)
(202) 662-2739 (Fax)

Counsel for Appellee U.S. Bancorp

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 28.1(e).  The brief contains 13,018 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Rule 32(b) of this Court's Rules of Practice.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared using Microsoft Word 2010 in Times New Roman, a proportionally spaced typeface, and 14-point size font.

/s/ Anthony H. Son

Anthony H. Son
anthonyson@andrewskurth.com
Andrews Kurth LLP
1350 I Street NW
Washington, D.C. 20005
202) 662-2700   (Telephone)
(202) 662-2739 (Fax)

Counsel for Appellee U.S. Bancorp